JONATHAN WEISSGLASS (SBN 185008)
LINDA LYE (SBN 215584)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: jweissglass@altshulerberzon.com
E-Mail: llye@altshulerberzon.com

Attorneys for Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| NEW UNITED MOTOR MANUFACTURING, INC., | **Case No. CV-08-0976 TEH** |
| Movant/Petitioner, | **OPPOSITION TO PETITION & MOTION TO VACATE LABOR ARBITRATION AWARD** |
| v. | |
| UNITED AUTO WORKERS LOCAL 2244, | |
| Respondent. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Contract provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    1990 decision by arbitrator Staudohar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Parties' practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      D.    Company's new sick leave policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      E.    Union's grievance and its submission to "final and binding" arbitration . . . . . . . . 4

      F.    First merits award by arbitrator Askin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      G.    Second merits award by arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Judicial Review Of An Arbitrator's Decisions Is "Highly Deferential" . . . . . . . . . 7

      B.    Arbitrator Askin's Awards On The Merits Issues Are "Final" Because The
            Parties Bifurcated Merits And Remedy Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    Arbitrator Askin Did Not Exceed His Jurisdiction By Declining To Assert
            Jurisdiction Over Remedy Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## CASES

*Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*,
  250 F.Supp.2d 107 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Assn. of Western Pulp & Paper Workers v. Rexam Graphic, Inc.*,
  221 F.3d 1085 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Astra Footwear Indus. v. Harwyn Int'l, Inc.*,
  442 F.Supp. 904 (S.D.N.Y. 1978), *aff'd*, 578 F.2d 1366 (2d Cir. 1978) (unpub.) . . . . . . . . 14

*Barnes v. Logan*,
  122 F.3d 820 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Burlington Northern & Santa Fe Ry. Co. v. Vaughn*,
  509 F.3d 1085 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
  207 F.3d 1126 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clarendon Nat'l Ins. Co. v. TIG Reins. Co.*,
  990 F.Supp.304 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*Coast Trading Co., Inc. v. Pacific Molasses Co.*,
  681 F.2d 1195 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Collins v. D.R. Horton, Inc.*,
  505 F.3d 874 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Comedy Club, Inc. v. Improv West Assocs.*,
  514 F.3d 833 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 18

*Conntech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*,
  102 F.3d 677 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Curacao v. Solitron Devices, Inc.*,
  356 F. Supp. 1 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*Dow Corning Corp. v. Safety Nat'l Casualty Corp.*,
  335 F.3d 742 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13

*Exxon Mobil Corp. v. Paper, Allied-Indus. Chem. & Energy Workers Int'l Union*,
  383 F. Supp. 2d 877 (M.D. La. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fortune, Alsweet and Eldridge, Inc. v. Daniel*,
  724 F.2d 1355 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hanford Atomic Metal Trades Council, AFL-CIO v. General Electric Co.*,
  353 F.2d 302 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hart Surgical, Inc. v. Ultracision, Inc.*,
  244 F.3d 231 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9

*Lindland v. U.S.A. Wrestling Assn., Inc.,*
   227 F.3d 1000 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Luong v. Circuit City Stores, Inc.,*
   368 F.3d 1109 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McClatchy Newspapers v. Central Valley Typographical Union,*
   686 F.2d 731 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*McGregor Van de Moere, Inc. v. Paychex, Inc.,*
   927 F. Supp. 616 (W.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McGuire, Cornwell & Blakey v. Grider,*
   771 F. Supp. 319 (D. Colo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Millmen Local 550 v. Wells Exterior Trim,*
   828 F.2d 1373 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Poweragent Inc. v. Elec. Data Sys. Corp.,*
   358 F.3d 1187 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Providence Journal Co. v. Providence Newspaper Guild,*
   271 F.3d 16 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Reddam v. KPMG LLP,*
   457 F.3d 1054 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 14

*Refino v. Feuer Transp., Inc.,*
   480 F.Supp. 562 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

*Roadway Pkg. System, Inc. v. Kayser,*
   357 F.3d 287 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rostad and Rostad Corp. v. Investment Mgmt. & Research, Inc.,*
   923 F.2d 694 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Smart v. IBEW, Local 702,*
   315 F.3d 721 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

*Success Village Apts. Inc. v. Amalgamated Local 376,*
   357 F.Supp.2d 446 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Trade & Transport, Inc. v. Natural Petroleum Charters, Inc.,*
   931 F.2d 191 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United Gov. Security Officers of America, Local 38 v. Wackenhut Corp.,*
   2005 WL 2104849 (D.Or. Aug. 29, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zechman v. Merrill Lynch, Pierce, Fenner & Smith*,
    742 F. Supp. 1359 (N.D. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES AND REGULATIONS

9 U.S.C.
    §10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    §10(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

29 U.S.C. §185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

California Labor Code §4650 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2           For the last two and a half years, Petitioner New United Motor Manufacturing, Inc.

3    ("NUMMI" or the "Company") has flouted the obligations set forth in its collective bargaining

4    agreement ("CBA") with Respondent United Auto Workers, Local 2244 ("UAW" or the "Union").

5    In fall 2005, the Company implemented a new sick leave policy, pursuant to which it terminated

6    approximately 100 employees.  The Union promptly filed a grievance under the dispute resolution

7    mechanism in the parties' CBA.  That dispute resolution mechanism provides for "final and

8    binding" arbitration.  As is typical in labor arbitration cases, the parties bifurcated the arbitration,

9    with the arbitrator ruling first on the "merits" issue, *i.e.*, whether the Company violated the contract,

10   and reserving for later any "remedy" issues.  The arbitrator decided the merits in two arbitration

11   awards, and in these awards found the Company's sick leave policy to violate the parties' CBA.

12   Rather than reinstate the improperly terminated employees, NUMMI now seeks to avoid its

13   contractual obligations.

14           NUMMI contends that the arbitral awards on the merits issues should be vacated because the

15   arbitrator declined to reach the remedy issues.  (Petn. at 14-15.)  This argument is meritless.  It is

16   well established that where, as here, the parties bifurcated the proceedings and the arbitrator reached

17   every issue that was submitted to him in the merits phase, the award is final and confirmable.  *See,*

18   *e.g., Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 235 (1st Cir. 2001); *Trade & Transport,*

19   *Inc. v. Natural Petroleum Charters, Inc.*, 931 F.2d 191, 192, 195 (2d Cir. 1991).  Moreover, in the

20   awards that NUMMI now seeks to vacate, the arbitrator declined to reach any remedy issues

21   *because of NUMMI's insistence* that, in the merits phase of the proceeding, he not reach any remedy

22   issues.  In other words, NUMMI seeks to vacate the arbitrator's award because he did precisely what

23   NUMMI requested and indeed insisted upon.

24           NUMMI also contends that the arbitrator exceeded his jurisdiction because he declined to

25   retain jurisdiction for himself over remedy.  (Petn. at 15.)  Common sense forecloses any argument

26   that an arbitrator exceeds his jurisdiction by declining it.  And the caselaw makes clear that, where

27   an arbitrator resigns, declines jurisdiction, or otherwise becomes unavailable, the arbitration should

28   proceed with a substitute arbitrator.  The parties' underlying and continuing obligation to arbitrate

1   their disputes demands that they do so.  *See, e.g., Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir.

2   2006); *Dow Corning Corp. v. Safety Nat'l Casualty Corp.*, 335 F.3d 742 (8th Cir. 2003).

3          Finally, the remedy NUMMI seeks does not flow from the arguments it makes.  NUMMI

4   complains that the arbitrator's decision to decline jurisdiction over the remaining remedy issues

5   would create inefficiencies by forcing the parties to arbitrate before "a brand new arbitrator," but

6   then seeks to *vacate* the already-issued merits awards.  (Petn. at 14).  Even if the arbitrator had

7   exceeded his jurisdiction by declining jurisdiction, the proper remedy here would be to vacate only

8   that portion of the award that supposedly exceeded his jurisdiction, not the portion of the award that

9   found NUMMI, on the merits, to have violated the contract.  *See, e.g., Comedy Club, Inc. v. Improv*

10  *West Assocs.*, 514 F.3d 833, 845 (9th Cir. 2007).  Vacating the merits decision would exacerbate the

11  very problem of which NUMMI complains by requiring the parties to re-arbitrate both the merits

12  and also the remedy issues before "a brand new arbitrator."  Indeed, the disconnect between

13  NUMMI's claimed defect in the arbitration awards and the remedy it seeks underscores the

14  meritless nature of this petition.  Unhappy at having lost before the arbitrator, NUMMI is attempting

15  to vacate the adverse rulings precisely so that it can try its luck again before "a brand new

16  arbitrator."  The federal policies favoring arbitration in general, and labor arbitration in particular,

17  forbid such tactics.

18  **II.     FACTUAL BACKGROUND**

19         The merits of the underlying contract dispute between the parties over sick leave rights is not

20  at issue in this petition.  Nevertheless, in light of the Company's contention that the arbitration

21  awards should be vacated because the arbitrator did not reach all of the issues submitted to him, we

22  provide some background on the issues that the parties did submit.

23         **A.     Contract provisions**

24         NUMMI and the UAW have been party to a series of CBAs since the mid-1980s.  The CBA

25  contains numerous sick leave provisions.  NUMMI's Appx. of Evid. ("Appx."), Exh. 1 at 3-4; *id.*,

26  Exh. 3 at 65-66 (CBA, Art. XXIII, §§9.1-9.5); *accord* Petn. at 6.  As the arbitrator explained, the

27  underlying contract dispute between the parties centers on one of the CBA's sick leave clauses, in

28  particular, the one referred to by the parties as the "'time for time' provision, based on the notion

1  that the amount of sick leave, for most employees, is equivalent to the employee's work 'time'

2  (seniority)."  Appx., Exh. 1 at 4.

3       The underlying contract dispute "arose as a result of the Company's implementation of a

4  policy that the Union claims violates" the time for time provision.  *Id.* at 3.

5       The CBA also contains a multi-step dispute resolution procedure that culminates in "final

6  and binding" arbitration.  Appx., Exh. 3 at 23 (CBA, Art. X, §8).

7       **B.    1990 decision by arbitrator Staudohar**

8       In 1990, the parties submitted to arbitrator Paul Staudohar a dispute over sick leave.  Appx.,

9  Exh. 1 at 4-5.  As we explain below, although NUMMI incorrectly characterizes the matter before

10  arbitrator Staudohar as a dispute over "'time for time' leave," NUMMI correctly notes that "the

11  effect of this decision was one of the sub-issues in the parties' current dispute."  Petn. at 7:5-6, 9-10.

12       **C.    Parties' practice**

13       It is undisputed that after the 1990 Staudohar decision and until the fall of 2005, NUMMI

14  allowed employees to remain on sick leave for their full "time for time" period and did not

15  terminate the sick leave once an employee's medical condition became permanent.  Appx., Exh. 1 at

16  10, Exh. 2 at 4-5.[1]

17       **D.    Company's new sick leave policy**

18       In fall 2005, the Company implemented a new sick leave policy pursuant to which it

19  terminated the sick leave of employees whose medical condition had become permanent, even if

20  they had not yet been on sick leave for the full length of their "time for time" period.  The Company

21  contended that its new policy was justified by the Staudohar arbitration decision issued 15 years

22  earlier.  Appx., Exh. 1 at 10-11, Exh. 2 at 6.  Pursuant to its new policy, the Company terminated

23  approximately 100 employees who were on sick leave but whose "time for time" leave had not yet

24  expired.  Appx., Exh. 2 at 7.

25

26

27

28

---

[1] A disability can be either temporary or permanent.  If the medical condition is work-related, the distinction affects the type of workers' compensation benefits to which the employee may be eligible under state law.  *See, e.g.,* Cal. Lab. Code §4650.

1

**E.    Union's grievance and its submission to "final and binding" arbitration**

2      The Union challenged the Company's new sick leave policy by filing a grievance under the

3    CBA's dispute resolution mechanism.  The matter was submitted to arbitrator Charles Askin for

4    arbitration.  Appx., Exh. 1 at 11, Exh. 2 at 7.  The parties stipulated that "all requirements of the

5    grievance procedure have either been met or waived" and that the matter was properly submitted to

6    arbitrator Askin "for a final binding arbitration."  Decl. of Linda Lye ISO Opp. to Petn. & Mot. to

7    Vacate ("Lye Decl."), Exh. A at 14:15-22; *see also id.*, Exh. B at 275:12-21.

8

**F.    First merits award by arbitrator Askin**

9      At what became the first of two arbitration proceedings on the merits of the grievance, the

10   Union in its opening statement contended that (1) the Company's new sick leave policy violated the

11   parties' CBA, in particular, the right to be on sick leave for the full length of an employee's "time

12   for time" clock ("contract issue"), and (2) that the 1990 Staudohar arbitration did not authorize the

13   Company's new sick leave policy ("Staudohar issue").  *Id.*, Exh. A at 21:11-22, 32:11-22.  The

14   Union also raised remedy issues that presented questions of contract interpretation.  *Id.* at 36:18,

15   37:18-22.  Specifically, the Union sought a ruling on the proper method for calculating the length of

16   an employee's "time for time" clock.  *Id.* at 41:11-13; 43:11-12.[2]  The Union acknowledged that

17   most remedy issues should be reserved for a later phase, but sought a ruling on the methodology

18   question because it involved an "overarching" "legal issue."  *Id.*, Exh. B at 272:2-23.

19   The Company objected to discussing any remedy issues and asserted that all remedy issues

20   should be reserved for a later phase.  *Id.*, Exh. A at 36:23-25 ("In terms of remedy process, we were

21   going to save that for another day which is the usual process."); *id.* at 37:7-12 ("If there's a remedy,

22   we come back and handle the remedy aspect of the case, which is typical.  And we're not really

23   prepared to deal with a remedy case here.  We're prepared to deal with a substantive case here.").

24

25      [2] The Union sought (and continues to seek) as a remedy in the case, among other things, that

26   any employees improperly terminated pursuant to the Company's new sick leave policy be
     reinstated and allowed to remain on sick leave status for the remainder of their "time for time"

27   clock.  *Id.* at 38:7-19; 44:16-25.  As part of the remedy issues, the Union therefore sought a ruling
     from the arbitrator on how the length of an employee's time for time leave should be calculated.  *Id.*

28   at 41:11-13; 43:11-12.

1    At the hearing, the parties stipulated to the arbitrator retaining jurisdiction over remedy.  *Id.*
2  at 14:24-15:3.

3    The parties exchanged simultaneous opening and closing briefs.  The Union's brief
4  addressed the same major issues raised in its opening statement at the arbitration hearing, *i.e.*, both
5  the contract issue and the Staudohar issue.  *Id.*, Exh. D at 14, 24; *id.*, Exh. E at 1-11.  The Union
6  also contended that the arbitrator should address "at this juncture," certain "overarching" remedy
7  issues, including the proper method for calculating the length of an employee's "time for time"
8  clock, but acknowledged that most remedy issues should be reserved for a later juncture.  *Id.*, Exh.
9  D at 34-35.

10    The Company took the position that the "sole issue" before the arbitrator was the Staudohar
11  issue.  *Id.*, Exh. F at 34.  NUMMI contended that the contract issue was not properly before the
12  arbitrator.  *Id.* at 17 n.3, 30, 32 n.7; *id.*, Exh. G at 2-3.  The Company's position was that if the
13  Union prevailed on the Staudohar issue, then "the parties would have to arbitrate the [contract] issue
14  de novo."  *Id.*, Exh. F at 34.

15    In his opinion and award, the arbitrator carefully limited his ruling to address only the issue
16  on which there was a "mutual understanding of the scope of authority granted to [him]."  Appx.,
17  Exh. 1 at 16:22.  In particular, he recognized that the Union had a "broader interpretation" of the
18  issue statement submitted to him (*i.e.*, both the contract and the Staudohar issues), and that although
19  he initially shared the same understanding, *id.* at 16:6-13, 20, he realized after the hearing and full
20  briefing that the Company did not believe arbitrator had jurisdiction to reach the contract issue.
21  *Id.* at 16:17-19.

22    Based on the Company's narrow view of the arbitrator's jurisdiction, arbitrator Askin
23  reached only the Staudohar issue, which both parties agreed he had the authority to reach.  *Id.* at
24  16:22-17:11.  On that issue, he agreed with the Union that the Company's sick leave policy was not
25  justified by the Staudohar decision and ordered a further hearing on the contract issue.  *Id.* at 21.

26    **G.    Second merits award by arbitrator**

27    At the hearing on the second arbitration, the Union sought to address two issues: (1) the
28  unresolved contract question of whether the Company's sick leave policy violated the parties' CBA

1    and (2) the proper methodology for calculating the length of the "time for time" sick leave.  Lye

2    Decl., Exh. C at 288:18-290:4.  The Company objected to including the methodology question

3    because "that seems more like a remedy issue."  *Id*. at 294:3-4.

4         Because the parties were unable to agree on the statement of issues, they stipulated to

5    "authorizing the Arbitrator to frame the issue in this proceeding."  *Id*. at 296:10-16.  They also

6    stipulated to his retention of jurisdiction over remedy "to the extent further proceedings over remedy

7    are necessary." *Id*. at 295:4-8.

8         The arbitrator then provided a lengthy and careful description of his arbitration

9    "philosophy," pursuant to which he will only reach issues on which there is a "mutual delegation of

10   authority" and he will refrain from reaching any issue that is "beyond the scope of the authority"

11   given to him by "both parties."  *Id*. at 298:11, 299:15-22.  He explained that he applied this

12   philosophy to the prior phase of the arbitration, in which the Company had a "narrow interpretation"

13   of the issues submitted to him but the Union had a "broad view."  *Id*. at 299:3-8.  Even though he

14   thought the Union's broader interpretation of the issues before him was "the common sense" view,

15   he "refrained from issuing a decision with regard to" the broader set of issues because he "viewed it

16   as being beyond the scope of the authority that both parties had given me."  *Id*. at 299:18-25; *see*

17   *also id*. at 299:15-18 ("I focused on that area that both parties had agreed upon, which in my view

18   represented a mutual delegation of authority to decide that issue.").

19        Applying this arbitration philosophy – that he can only decide issues on which there is a

20   mutual delegation of authority – the arbitrator then explained that he would not reach the

21   methodology question raised by the Union "in this proceeding" because the Company "has not

22   elected to give me the authority to do that" and that the methodology "issue should be handled in

23   what I'm going to call the remedy or liability" proceeding.  *Id*. at 301:8-14, 303:14-21; *see also id*.

24   at 306:15-18.[3]

25        Based on the arbitrator's framing of the issues at the outset of the hearing, the Union did not

26   address the remedy/methodology issue "in this stage of the proceedings."  *Id*., Exh. H at 27 n.9.

27   _____

28        [3]Arbitrator Askin used the terms "liability" and "remedy" as synonyms for the next phase of
     the proceedings.  He referred to the "merits" question as the "substantive issue."  *Id*. at 301:15-17.

OPP. TO PETITION & MOTION TO VACATE LABOR ARBITRATION AWARD, Case No. CV-08-0976 TEH    6

1    In his opinion and award, the arbitrator agreed with the Union that the Company's new sick

2    leave policy violated employees' sick leave rights under the CBA to "time for time" leave:

3        [T]he Employer violated the Collective Bargaining Agreement by implementing a new
         policy regarding long-term leaves of absence that terminated "time for time" sick leave
4        entitlement before the "maximum period set forth" in Section 9.3, and by terminating
         employees whose entitlement to time for time leave had not been exhausted.  [Appx., Exh. 2
5        at 23.]

6    The arbitrator also stated that, in light of NUMMI's narrow view of the issues that were to

7    be decided "at this stage of the dispute," "any determination of an appropriate remedy . . . would be

8    deferred to a later proceeding."  *Id*. at 23 n.6 (emphasis added).

9    Arbitrator Askin then "encouraged" the parties to negotiate a resolution of "the appropriate

10   remedy, and all other outstanding issues arising from the subject grievance," but specified that

11   "[b]oth parties shall retain the right to seek arbitral resolution of any outstanding remedial issues."

12   *Id*. at 23 & n.7.  He stated that although "[t]he parties authorized [him] to retain jurisdiction of the

13   remedy," he "respectfully declines that delegation of authority."  *Id*. at 23 n.7.  As a result, any

14   further arbitration would be "before a different arbitrator, who shall be selected by mutual agreement

15   or selected in accordance with the parties' customary method of selecting an arbitrator."  *Id*. at 23.

16   **III.    ARGUMENT**

17       **A.    Judicial Review Of An Arbitrator's Decisions Is "Highly Deferential"**

18   "[J]udicial review of an arbitrator's decision 'is both limited and highly deferential.'  An

19   award will not be set aside unless it manifests a complete disregard of the law.  Thus, an award must

20   be confirmed if the arbitrators even arguably construed or applied the contract and acted within the

21   scope of their authority."  *Barnes v. Logan*, 122 F.3d 820, 821-22 (9th Cir. 1997) (citations omitted).

22   Section 10 of the Federal Arbitration Act ("FAA") enumerates the circumstances under which a

23   court "may" (but is not required to) vacate an arbitration award.  9 U.S.C. §10.  NUMMI contends

24   that arbitrator Askin's awards should be vacated because it was "so imperfectly executed . . . that a

25   mutual, final and definite award upon the subject matter was not made" and that the arbitrator

26   "exceeded [his] powers."  9 U.S.C. §10(a)(4).  Neither argument has merit.[4]

27   _____

28       [4]Although NUMMI brings its petition under both the FAA and Section 301 of the Labor
                                                                      (continued...)

**B.      Arbitrator Askin's Awards On The Merits Issues Are "Final" Because The Parties Bifurcated Merits And Remedy Issues**

NUMMI contends that arbitrator Askin's awards are not "final" because he failed to decide remedy issues.  As NUMMI concedes, the parties did *not* ask the arbitrator to decide the remedy issues "in that round of hearings."  Petn. at 10:22-23.  Instead, the parties bifurcated merits and remedy.  Notably, the arbitrator declined to reach any remedy issues *because* the Company insisted that he address only remedy in this phase of the proceedings.  Where, as here, the parties bifurcated merits and remedy proceedings, the merits rulings are final awards because they reached all of the issues submitted to the arbitrator in that phase of the proceedings.  As a result, the awards are subject to judicial confirmation, not vacatur.[5]

1.      Where the parties have bifurcated the arbitration proceedings, and the arbitrator has decided all of the issues "submitted, in a discrete proceeding," the merits award is "final."  *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 235 (1st Cir. 2001) (merits award final where parties agreed to bifurcate); *see also, e.g., Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 19-20 (1st Cir. 2001) (where parties "divided the arbitration into separate phases and requested that the arbitrator retain jurisdiction over the remedy issue," "arbitrator's partial award on

---

[4](...continued)
Management Relations Act (Petn. at 1:1-2), which governs labor contracts, it makes no effort to argue that the "extremely limited" standards governing "[j]udicial scrutiny of an arbitrator's decision in a labor dispute" under Section 301 are satisfied in this case.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001); *see also, e.g., United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision").  Instead, NUMMI relies exclusively on the FAA.  Any belated arguments, under either the FAA or Section 301, are waived.  *See Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007).  NUMMI correctly acknowledges that it is unclear whether the FAA even applies to labor agreements.  Petn. at 2 n.3; *see also Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 n.1 (9th Cir. 2004) (expressly declining to pass on FAA's applicability to collective bargaining agreements).  Even if the FAA applied to labor agreements, NUMMI's petition to vacate is meritless, for the reasons we discuss in this brief.

[5] The Union has brought a separate action under Section 301 of the Labor Management Relations Act to confirm the arbitrator's awards and to compel arbitration on the remedy issues.  (Case No. CV 08-1242-TEH.)  (The Court ordered the cases related on March 17, 2008.)  This brief addresses only NUMMI's petition to vacate the awards.

---

1    liability" was "final"); *Trade & Transport, Inc. v. Natural Petroleum Charters, Inc.*, 931 F.2d 191,

2    192, 195 (2d Cir. 1991) (award on liability was "final" where parties requested a ruling on liability

3    and left "for a later time the calculation of damages, if any" because the arbitration panel "did

4    conclusively decide every point required by and included in the first part of the parties' modified

5    submission"); *Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*, 250 F.Supp.2d 107, 113

6    (S.D.N.Y. 2003) (where parties agreed to bifurcate liability from remedy, arbitral award on liability

7    "can be confirmed notwithstanding the absence of an award that finally disposes of the remedy

8    submitted to arbitration"); *McGregor Van de Moere, Inc. v. Paychex, Inc.*, 927 F. Supp. 616, 618

9    (W.D.N.Y. 1996) (confirming as "final" arbitration award that reached only liability issues where

10   parties agreed to bifurcate arbitration proceeding into separate liability and damages phases: "the

11   panel here conclusively decided every point required by and included in the parties' submissions

12   concerning liability, and it was therefore final as to that issue"); *Refino v. Feuer Transp., Inc.*, 480

13   F.Supp. 562, 567 (S.D.N.Y. 1979) (confirming portion of arbitration award that reached only liability

14   where "arbitrator decided the issues of liability submitted to him" and remedy issues were

15   "analytically separable from the issues decided by the arbitrator").

16         The Ninth Circuit has approvingly noted the bifurcation rule consistently adopted by other

17   circuits. *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1376 n.3 (9th Cir. 1987) ("An

18   agreement to bifurcate might suggest that the parties and the arbitrator desired that each

19   determination be final and binding."). Although the Ninth Circuit in *Millmen* found an arbitration

20   award not final and confirmable where it reached merits but not remedy issues, the parties in that

21   case "did not agree to bifurcate the liability-remedy determination." *Id.*

22         NUMMI does not dispute that the arbitrator has decided all of the merits issues submitted to

23   him in this phase of the proceedings. Instead, it argues that the awards are not "final" because the

24   arbitrator has not ruled on remedy. *See, e.g.*, Petn. at 11. But as discussed above, *see supra* Parts II-

25   F&G, the parties chose to resolve remedy at a later juncture. Arbitrator Askin's liability awards are

26   therefore "final" because he decided all of the merits issues "submitted" to him in the "discrete"

27   merits "proceeding." *Hart Surgical*, 244 F.3d at 235; *see also Trade & Transport*, 931 F.2d at 192,

28   195 (liability award final where parties requested that arbitration panel rule on liability and leave "for

1   a later time the calculation of damages, if any"). "In fact, had the parties not been stipulating to

2   bifurcation, there would have been no need for the parties to specifically request," as they did here,

3   "that the arbitrator retain jurisdiction over the remedial phase. Clearly, then, both the parties and the

4   arbitrator agreed to bifurcate the arbitral proceeding and understood the determination of liability to

5   be a final award." *Providence Journal*, 271 F.3d at 20.

6       2.   The cases on which NUMMI relies do not support its position that the awards in this

7   case are not "final" or should be vacated. (Petn. at 11-12.) *Smart v. IBEW, Local 702*, 315 F.3d 721

8   (7th Cir. 2002), *rejected* the argument that an arbitration award that found a contractual breach, but

9   did not address damages, should be vacated under 9 U.S.C. §10(a)(4) for lack of finality. *Id.* at 726.

10  The Court held that "section 10(a)(4) should *not* be interpreted to incorporate the final judgment rule

11  of 28 U.S.C. §1291," which requires damages and other remedy issues to be "incorporated into the

12  judgment" for an award to be "final and appealable." *Id.* at 725-26 (emphasis in original). The

13  Seventh Circuit went on to state that even if an arbitration award left "thorny remedial issues for

14  future determination," it would still be "enforceable . . . if all it did was determine liability," as long

15  as "it were clear that the arbitrators had finished their assignment and clear as well what their award

16  required." *Id.* at 726.

17      Here, the arbitrator has "finished [his] assignment," because he decided all of the merits

18  issues submitted to him. It is also plain what his award required: He decided that "the Employer

19  violated the Collective Bargaining Agreement by implementing a new [sick leave] policy . . . , and

20  by terminating employees" pursuant to that policy. Appx., Exh. 2 at 23. He also "encouraged" the

21  parties to "negotiate a resolution of this dispute" but clarified that they retained the right to arbitrate

22  "outstanding remedial issues arising from the subject grievance." *Id.* at 23 & n.7. Where, as here,

23  the arbitrator found a contractual breach and directed the parties to resolve the remedy (in this case,

24  through negotiation or arbitration), "there is no ambiguity about what the arbitrator[] decided."

25  *Smart*, 315 F.3d at 726 (award not ambiguous or indefinite where arbitrators decided that party was

26  required to pay fringe benefits under collective bargaining agreement and "directed the parties to

27  compute the amount owed"). The awards thus need not address remedy to be final within the

28  meaning of Section 10(a)(4). *Id.*

1     *Conntech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677 (2d Cir. 1996) and

2     *Curacao v. Solitron Devices, Inc.*, 356 F. Supp. 1 (S.D.N.Y. 1973), merely confirmed arbitration

3     awards as final where they specified damages.  But these rulings are entirely consistent with the rule

4     that awards are *also* "final" if, as here, the parties bifurcated the proceedings and the arbitrator

5     reached all of the issues submitted in the merits phase.  *See, e.g.*, *Trade & Transport,* 931 F.2d at

6     195.

7          3.     Moreover, as NUMMI's own cases show, if failure to specify a remedy rendered the

8     award incomplete (for example, because the parties, contrary to what occurred here, did *not* bifurcate

9     merits and remedy), the remedy would be a remand to the arbitrator to specify a remedy.  The

10    remedy would not be – as NUMMI urges – vacatur of the liability awards.  *Clarendon Nat'l Ins. Co.*

11    *v. TIG Reins. Co.*, 990 F.Supp.304, 311 (S.D.N.Y. 1998) (remanding portion of arbitral award that

12    did not specify damages to arbitral panel "for a ruling as to the amount of damages").[6]  Indeed,

13    NUMMI makes the same "strange" and "not persuasive" argument as the party in *Curacao* that

14    argued that an award was "not final, definite, and conclusive" and should be vacated because "the

15    arbitrators left open the possibility of a further arbitration in the future" on damages.  356 F.Supp. at

16    11.  As the *Curacao* court explained, if an award does not specify remedy, "the result [is] not that the

17    debtor party escaped liability, as Solitron [and NUMMI] apparently hope[] to do, but simply that the

18    matter [be] resubmitted to the arbitrators to find the amount due."  *Id*. at 12.

19         NUMMI's blatant gamesmanship should not be countenanced.  *See New Hampshire v.*

20    *Maine,* 532 U.S. 742, 750-751 (2001) (judicial estoppel appropriately invoked where party's later

21    position is "clearly inconsistent" with its earlier position, party prevailed on its earlier position, and

22    "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an

23    unfair detriment on the opposing party if not estopped").  After refusing to authorize the arbitrator to

24    rule on any remedy issues, NUMMI now seeks to vacate his awards because – *at NUMMI's behest* –

25    he did not rule on any remedy issues.  Appx., Exh. 2 at 23 n.6 (arbitrator "deferred [remedy issues] to

26    a later proceeding" "*[b]ased on the Employer's position* concerning the scope of the issue at this

27

28          [6] NUMMI refers to this case as "*Commer v. District Council*," but the citation is to a case
      named "*Clarendon*."  (Petn. at 12:5-6.)

1  stage of the dispute") (emphasis added).  The Union should not be deprived of favorable and final

2  arbitral awards on the merits of its grievance, and forced to rearbitrate merits issues which, due to

3  NUMMI's narrow submission of issues to the arbitrator, has already resulted in piecemeal

4  arbitration.  Remarkably, NUMMI contends that the awards should be vacated because "under the

5  Award, the parties are condemned to additional litigation."  (Petn. at 12:21.)  It is NUMMI that has

6  condemned the Union to multiple arbitration proceedings and now this additional judicial

7  proceeding.

8
   **C.      Arbitrator Askin Did Not Exceed His Jurisdiction By Declining To Assert**
9  **         Jurisdiction Over Remedy Issues**

10        Equally meritless is NUMMI's argument that the awards should be vacated because the

11  arbitrator *exceeded* his jurisdiction.  Although NUMMI attempts to recast the arbitrator as having

12  "ordered the parties to arbitrate with someone else," the arbitrator merely resigned from the matter.

13  Where an arbitrator resigns, declines jurisdiction, or otherwise becomes unavailable, the arbitration

14  simply proceeds with a substitute arbitrator.

15        1.      In *Dow Corning Corp. v. Safety Nat'l Casualty Corp.*, 335 F.3d 742 (8th Cir. 2003),

16  the Eighth Circuit rejected the argument that an arbitration panel had exceeded its authority by

17  proceeding with a substitute arbitrator after one of the members of the three-arbitrator panel

18  resigned.  In affirming the denial of the motion to vacate, the Eighth Circuit emphasized that the

19  vacancy was filled using the arbitration agreement's method for selecting arbitrators.  *Id.* at 749.  The

20  appellate court also noted that "starting over," as the party seeking vacatur sought to do, "would have

21  deprived Safety of its 'win'" in the stage of the arbitration process prior to the arbitrator's

22  resignation.  *Id.*

23        In this case, the arbitrator's award provides that "[b]oth parties shall retain the right to seek

24  arbitral resolution of any outstanding remedial issues arising from the subject grievance before a

25  different arbitrator, who shall be selected by mutual agreement or selected in accordance with the

26  parties' customary method of selecting an arbitrator."  Appx., Exh. 2 at 23.  As in *Dow*, arbitrator

27  Askin's award provides for selection of a substitute arbitrator in accordance with the customary

28  method of arbitrator selection set forth in the parties' arbitration agreement.  Moreover, vacatur

1   would accomplish the very result NUMMI claims it seeks to avoid – requiring the parties to arbitrate

2   not only remedy, but also merits, before a different arbitrator.  NUMMI's petition is a transparent

3   attempt to "deprive[] [the Union] of its 'win'" on the merits issues.  335 F.3d at 749.  Under these

4   circumstances, the motion to vacate should be denied.[7]

5          2.       Although NUMMI attempts to paint the arbitrator's decision to decline jurisdiction

6   over remedy as some kind of extraordinary and unauthorized rewriting of the parties' grievance and

7   arbitration process (Petn. at 16), the requirement to proceed with a substitute arbitrator stems

8   primarily from NUMMI's underlying agreement in the CBA to arbitrate disputes.  Arbitrator Askin's

9   unavailability to preside over the remedy proceedings does not vitiate NUMMI's on-going obligation

10  to arbitrate the contractual dispute with the Union.

11         In *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006), the district court ruled that an

12  arbitration agreement became unenforceable after the arbitral forum – the National Association of

13  Securities Dealers ("NASD") – declined jurisdiction over the parties.  *Id.* at 1057.  Although the

14  arbitration agreement at issue in the case "select[s] the rules of the NASD, [it] does *not* state that the

15  arbitration is to take place before the NASD itself.  Had the latter been intended, the parties could

16  easily have said so."  *Id.* at 1059.  The Ninth Circuit reversed the district court's ruling that the

17  parties were no longer bound to arbitrate "when the NASD bowed out.  There is no evidence that

18  naming of the NASD was so central to the arbitration agreement that the unavailability of that

19  arbitrator brought the agreement to an end.  Something more direct is required before we, in effect,

20  annihilate an arbitration agreement."  *Id.* at 1061 (citations omitted); *see also McGuire, Cornwell &*

21  *Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991) ("where the arbitrator named in the

22  arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement [to

23  arbitrate] but instead appoints a different arbitrator"); *Zechman v. Merrill Lynch, Pierce, Fenner &*

24  *Smith*, 742 F. Supp. 1359, 1363, 1365 (N.D. Ill. 1990) (granting motion to compel because parties

25  remained obligated to arbitrate even though arbitration board to which they had submitted dispute

26

27         [7] *Dow* also addressed a separate issue, finding that the arbitrators' awards were not "binding"
    where the agreement to arbitrate did not explicitly or implicitly provide for "final and binding
28  arbitration."  335 F.3d at 745-55.  In this case, by contrast, the parties' CBA expressly provides that
    arbitration decisions are "final and binding."  Appx., Exh. 3 at 23 (CBA, Art. X, §8).

1  "decline[d] jurisdiction"); *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F.Supp. 904, 910-11

2  (S.D.N.Y. 1978) ("when the arbitrator selected by the parties cannot or will not perform," parties

3  remain obligated to arbitrate and selection of substitute arbitrator appropriate), *aff'd*, 578 F.2d 1366

4  (2d Cir. 1978) (unpub.).

5      The parties' CBA in this case designates the American Arbitration Association as the entity

6  that will provide a list of arbitrators, from whom the parties will select an arbitrator; it does not

7  require the arbitration to take place before a particular arbitrator or require the arbitrator designated

8  by the parties to hear both merits and remedy phases.  Appx., Exh. 3 at 21-24 (CBA, Art. X, §§5-10).

9  "Had the latter been intended, the parties could easily have said so." *Reddam*, 457 F.3d at 1059.

10  There is no evidence whatsoever that the selection of any single arbitrator to hear both merits and

11  remedy phases was "so central to the arbitration agreement that [arbitrator Askin's] unavailability . . .

12  brought the agreement [to arbitrate] to an end." *Id.*  Under these circumstances, arbitrator Askin's

13  decision to "bow[] out" of the remedy phase does not end the parties' obligation to arbitrate the

14  remainder of the dispute. *Id.* at 1061.  In contending that it has no obligation to arbitrate the

15  remainder of the dispute before a substitute arbitrator, NUMMI effectively seeks to "annihilate" the

16  parties' "arbitration agreement." *Id.*  Such a result cannot be tolerated under the "strong federal

17  policy favoring arbitration." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,  207 F.3d 1126, 1128

18  (9th Cir. 2000).

19      3.    The cases on which NUMMI relies (Petn. at 15, 17 n.9) do not support the conclusion

20  that arbitrator Askin exceeded his jurisdiction and instead show that there is no basis for vacating his

21  already-issued merits rulings.

22      In *Roadway Pkg. System, Inc. v. Kayser*, 357 F.3d 287 (3d Cir. 2001), the Third Circuit

23  affirmed a district court ruling that an arbitrator had exceeded his jurisdiction where his decision

24  addressed issues beyond "the only issue presented to" him. *Id.* at 300.  Similarly, *Exxon Mobil Corp.*

25  *v. Paper, Allied-Indus. Chem. & Energy Workers Int'l Union*, 383 F. Supp. 2d 877 (M.D. La. 2005),

26  found an arbitrator to have exceeded his jurisdiction where the arbitrator reached issues that he

27  "acknowledged that the parties had not asked him to examine." *Id.* at 881.  There is simply no

28  argument that arbitrator Askin exceeded his jurisdiction by reaching out to decide issues not

1   presented to him.  He laboriously explained his arbitration philosophy to the parties and, based on

2   that philosophy, scrupulously limited his decisions to only those issues on which there was a "mutual

3   delegation of authority" for him to decide.  *See supra* Parts II-F&G.

4          In *McClatchy Newspapers v. Central Valley Typographical Union*, 686 F.2d 731 (9th Cir.

5   1982), the Ninth Circuit stated that it is "not appropriate" for an arbitrator to "redetermine the issues"

6   that have already been submitted and decided.  *Id.* at 733; *id.* at 734 n. 1 (recognizing "policy which

7   forbids an arbitrator to redetermine an issue which he has already decided").  Yet, that is precisely

8   what NUMMI seeks to do – vacate arbitrator Askin's merits awards so that they can be

9   "redetermined" before a different arbitrator.  Similarly, *Lindland v. U.S.A. Wrestling Assn.*, *Inc.*, 227

10  F.3d 1000 (7th Cir. 2000), declined to confirm an arbitration award where an arbitrator redetermined

11  the merits of a claim already decided by another arbitrator, in express violation of arbitral forum

12  rules.  *Id.* at 1004; *id.* at 1003-04 (finding also that second arbitration was *ultra vires* where its "*sole*

13  subject is the decision of a prior arbitrator") (emphasis added).

14         *Coast Trading Co., Inc. v. Pacific Molasses Co.*, 681 F.2d 1195 (9th Cir. 1982), stands for

15  the unremarkable proposition that where the contract between the parties specifies the remedies to be

16  awarded for a contractual breach, arbitrators exceed their jurisdiction by providing for different

17  remedies.  *Id.* at 1197, 1198 (contract provided that remedy for breach by seller was for buyer to

18  cancel contract and receive damages, measured by difference between contract price and market

19  price on date of cancellation; arbitration panel exceeded jurisdiction where, after finding seller in

20  breach, it failed to award buyer damages and instead extended contract delivery date for seller to

21  deliver goods).  The case is inapposite because the CBA does not specify the remedies to be awarded

22  for a contractual breach of the type at issue here.  The only limitation on an arbitrator's remedial

23  authority pertains to back pay awards and the arbitrator in this case, not having issued any back pay

24  awards, has not issued any ruling at odds with those limitations.  Appx., Exh. 3 at 24 (CBA, Art. X,

25  §10).  Moreover, to the extent the requirement to proceed with a substitute arbitrator is construed as

26  a "remedy" ordered by arbitrator Askin, there is nothing so extraordinary about this remedy as to

27  require the merits awards to be vacated.  As discussed above, Part III-C-2, the obligation to proceed

28  with a substitute arbitrator flows from the underlying contractual duty to arbitrate disputes.

1    Arbitrator Askin can hardly be said to have exceeded his jurisdiction by ordering a "remedy" that

2    requires the parties to comply with their contractual obligation to arbitrate disputes. *See Sprewell*,

3    266 F.3d at 987 ("[A]n arbitrator should be given substantial latitude in fashioning a remedy under a

4    CBA."); *Assn. of Western Pulp & Paper Workers v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1091 (9th

5    Cir. 2000) ("Arbitrators are granted wide latitude to fashion remedies appropriate to the situations

6    they confront.").

7        4.    Just as arbitrator Askin's unavailability to arbitrate the remedy phase does not vitiate

8    the parties' mutual obligation to arbitrate the remaining issues arising from the Union's grievance,

9    nor does it justify vacating the merits awards he has already issued. Where a substitute arbitrator is

10   appointed to replace an arbitrator who has become unavailable after the issuance of a partial final

11   award, the substitute arbitrator lacks authority to revisit the issues already determined by the now-

12   unavailable arbitrator, absent an agreement by both parties to rearbitrate the already-decided issues.

13        In *Trade & Transport*, one member of a three-member arbitration panel passed away after

14   the panel had issued a "partial final award" on the merits in response to the parties' request for a

15   bifurcated ruling, but before the panel had issued an award on damages. The party that had been

16   found in breach sought to rearbitrate the dispute "ab initio" before the reconstituted panel. 931 F.2d

17   at 194. The panel refused to revisit the already-issued merits ruling and awarded damages to the

18   non-breaching party. *Id.* at 194. The district court confirmed the arbitration award and the Second

19   Circuit affirmed:

20       [O]nce arbitrators have finally decided the submitted issues, they are, in common-law
         parlance, "*functus officio,*" meaning that their authority over those questions is ended. *Thus,*
21       *if the parties have asked the arbitrators to make a final partial award as to a particular issue
         and the arbitrators have done so, the arbitrators have no further authority, absent agreement*
22       *by the parties, to redetermine that issue.*

23   *Id.* at 195 (emphasis added, citations omitted); *see also Success Village Apts. Inc. v. Amalgamated*

24   *Local 376*, 357 F.Supp.2d 446 (D. Conn. 2005) (death of one member of arbitration panel that had

25   already "reached a final decision on the submitted issues" did not provide basis for vacating

26   arbitration award); *United Gov. Security Officers of America, Local 38 v. Wackenhut Corp.*, 2005

27   WL 2104849, *4-5 (D.Or. Aug. 29, 2005) (where arbitrator died after deciding that dispute was

28   arbitrable, court "remanded [the case] for further arbitration by another arbitrator selected pursuant to

1  the CBA" but clarified that "[o]n remand, the arbitrator should not revisit Arbitrator Snow's

2  determination that the dispute was arbitrable").

3         The Ninth Circuit, in *McClatchy*, a case on which NUMMI relies (Petn. at 17 n.9), has also

4  recognized the "functus officio" doctrine.  Under that doctrine, arbitrators may not "redetermine the

5  issues" already submitted to them because once a "final award" has been issued on those issues, their

6  authority over those issues "is exhausted."  686 F.2d at 734.  Further arbitration proceedings do "not

7  . . . [present] an opportunity to relitigate" the merits of the Union's grievance.  *Id*. at 734 n.1.

8         Here, arbitrator Askin "conclusively decide[d] every point required by and included in the

9  first part of the parties'" submissions on the merits of the Union's grievance.  *Trade & Trans.*, 931

10  F.2d at 195.  That being so, the merits awards are final.  *Id.*  Just as in *Trade & Transport*, the

11  substitute arbitrator who oversees the remedy phase has no authority to redetermine arbitrator

12  Askin's merits determinations, absent mutual agreement of the parties.  *Id.*[8]

13         Even if the Court were to conclude that arbitrator Askin exceeded his jurisdiction by

14  declining jurisdiction over remedy, there is no basis for vacating the portion of the awards that

15  address the merits issues.  The Ninth Circuit has held that "[i]f an arbitrator exceeded the scope of

16  his authority in issuing an award, and that award is divisible, we may vacate part of the award *and*

17  *leave the remainder in force*."  *Comedy Club, Inc. v. Improv West Assocs.*, 514 F.3d 833, 845 (9th

18  Cir. 2007)  (emphasis added).  The *only* aspect of arbitrator Askin's awards that NUMMI contends

19  "exceeded his jurisdiction" is the portion in which he declined jurisdiction over the remedy phase.

20  (Petn. at 15-17.)  NUMMI makes no argument that he exceeded his jurisdiction by concluding, on

21  the entirely "divisible" issue, that the Company breached the parties' collective bargaining

22

23  ─────────────────────

24         [8] In those instances where courts have found an arbitral decision incomplete on the grounds

25  that no remedy was specified, courts have remanded so that the arbitrator can specify a remedy but
    have not permitted relitigation of issues already decided.  *See, e.g., Hanford Atomic Metal Trades*

26  *Council, AFL-CIO v. General Electric Co.*, 353 F.2d 302, 307-08 (9th Cir. 1966) ("The
    resubmission to the arbitration committee was not for the purpose of relitigating or modifying the

27  award.); *Clarendon Nat'l Ins.*, 990 F. Supp. at 311; *Refino*, 480 F. Supp. at 565; *Curacao*, 356 F.
    Supp. at 12.  For the reasons discussed above, however, *see supra* Part III-B, arbitrator Askin's

28  awards are not incomplete because he decided all of the issues submitted to him in the bifurcated
    merits phase of the arbitration.

1    agreement.[9]  That being so, the portion of the awards addressing the merits of the Union's grievance

2    should be "le[ft] . . . in force."  *Comedy Club*, 514 F.3d at 845.

3          Any other approach would bring about the very result that NUMMI supposedly seeks to

4    avoid by forcing the parties to relitigate both merits and remedy "before a brand new arbitrator."

5    (Petn. at 14.)  But despite NUMMI's protestations, its petition to vacate the merits awards is a

6    transparent attempt to re-litigate the issues on which it has lost "before a brand new arbitrator."  *See*

7    *Fortune, Alsweet and Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) ("[A] party may

8    not submit a claim to arbitration and then challenge the authority of the arbitrator to act after

9    receiving an unfavorable result.")

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20

---

21        [9] NUMMI could only succeeded in overturning arbitrator Askin's conclusion that the

22   Company violated the contract if it demonstrated that the arbitrator manifestly disregarded the law –
     a standard NUMMI has not even attempted and cannot possibly satisfy.  *See Collins v. D.R. Horton,*

23   *Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) ("Although § 10 does not sanction judicial review of the
     merits of arbitration awards, we have adopted a narrow 'manifest disregard of the law' exception

24   under which a procedurally proper arbitration award may be vacated. . . .  The manifest disregard
     exception requires 'something beyond and different from a mere error in the law or failure on the

25   part of the arbitrators to understand and apply the law.'  Accordingly, we may not reverse an

26   arbitration award even in the face of an erroneous interpretation of the law.") (citations omitted);
     *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004) ("Manifest disregard of the

27   law means something more than just an error in the law or a failure on the part of the arbitrators to
     understand or apply the law.  It must be clear from the record that the arbitrators recognized the

28   applicable law and then ignored it.") (internal quotation marks, citations omitted).

**IV.    CONCLUSION**

For the foregoing reasons, the Union respectfully requests that NUMMI's petition and motion to vacate arbitrator Askin's awards be denied and that the Union be awarded attorneys' fees, expenses, and costs in opposing this meritless petition.[10]

Dated:          March 20, 2008                    Respectfully submitted,

                                                  JONATHAN WEISSGLASS
                                                  LINDA LYE
                                                  ALTSHULER BERZON LLP


                                                  By: /s/ Linda Lye                    
                                                           Linda Lye

                                                  Attorneys for Respondent

---

[10] The Union will bring a motion for attorney's fees, expenses, and costs, in the event the Court denies the Company's petition to vacate.  *See*, *e.g.*, *Rostad and Rostad Corp. v. Investment Mgmt. & Research, Inc.*,  923 F.2d 694, 697 (9th Cir. 1991) (awarding attorneys' fees to party opposing petition to vacate arbitration award).