1  SEYFARTH SHAW LLP
   Nick C. Geannacopulos (SBN 114822) ngeannacopulos@seyfarth.com
2  Christian J. Rowley (SBN 187293) crowley@seyfarth.com
   560 Mission Street, Suite 3100
3  San Francisco, CA  94105
   Telephone:  (415) 397-2823
4  Facsimile :  (415)  397-8549

5

   Attorneys for Petitioner
6  NEW UNITED MOTOR MANUFACTURING INC.

7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  NEW UNITED MOTOR MANUFACTURING)      Case No.  CV 08 976 TEH
    INC.                          )
13                                )
              Movant/Petitioner,  )
14                                )      **NUMMI'S REPLY BRIEF IN SUPPORT**
         v.                       )      **OF PETITION TO VACATE**
15                                )
    UNITED AUTO WORKERS LOCAL 2244, a)
16  labor organization,           )
                                  )
17            Respondent.         )
                                  )
18                                )
   _____)
19
            Defendant New United Motor Manufacturing Inc. ("NUMMI") respectfully submits this
20
    Reply Brief to the Opposition filed by the United Auto Workers Local 2244 ("Local 2244" or the
21
    "UAW") and the UAW International ("International" collectively "Union").  This Memorandum
22
    is supported by NUMMI's Opposition to Plaintiffs Motion for Summary Judgment in the matter
23
    *International Union, United Automobile, Aerospace and Agricultural Implement Workers  et al*
24
    *v. New United Motor Manufacturing,* CV 08-1242 THE and the Declarations filed in that case by
25
    NUMMI and the Union.
26

27

28

_____
                NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE

Table of Contents

Page

I.   INTRODUCTION ...................................................................................2

II.  ARGUMENT .......................................................................................4

     A.   The Decisions Are "Appealable" Because the Arbitrator Quit. ............4

     B.   The Bifurcation of Hearings Is Not the Dispositive Issue In Terms Of Determining Whether the Decisions Can Be "Appealed." .....................4

          1.   The Exception Asserted by the UAW is Not "Well Established." ..............5

          2.   The Facts Supporting Such an Exception Are Not Present in this Case......6

          3.   The Vast Exception Proposed by the UAW is Contrary to the Final Judgment Rule        7

     C.   The Remaining Issues in the Arbitration are not Purely Ministerial. .....................8

     D.   The Fact that the Awards are Appealable Does not Decide the Section 10(a)(4) Issues..............................................................................8

     E.   Section 10(a)(4) Requires a Complete and Final Decision as to the Subject Matter Over Which the Arbitrator Has Jurisdiction. .................................9

     F.   Bifurcation of the Hearings is Not the Dispositive Issue.......................................10

     G.   The UAW Arguments About Forum Unavailability Are Off Point. ....................11

     H.   The Panel Arbitration Cases Cited by Plaintiff Do No Apply, but if Anything Support NUMMI's Argument. ...............................................11

     I.   Remand is Not Appropriate. .................................................................13

     J.   The Arbitrator Had No Authority To Order Further Arbitration ..........................14

III. CONCLUSION..................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Astra Footwear Indus. v. Harwyn Int'l Inc.*
    442 F. Supp. 907 (S.D.N.Y. 1978) ...............................................................................11

*Ayrshire Collieries Corp. v. United States*
    331 U.S. 132 (1947)....................................................................................................12

*Beers Constr. Co. v. Pikeville United Methodist Hosp. of Ky., Inc.*
    129 Fed. Appx. 266 (6th Cir. Ky. 2005)......................................................................14

*Cia de Navegacion Omsil, S.A. v. Hugo Neu Corp.*
    359 F. Supp. 898 (S.D.N.Y. 1973) .............................................................................12

*Clarendon Nat'l Ins. Co. v, TIG Reins Co*
    990 F. Supp. 2d 304 (S.D.N.Y. 1998)...................................................................13, 14

*ConnTech Dev. Co. v. Univ. of Conn. Educ.*
    102 F.3d 677 (2d Cir. 1996)..........................................................................................9

*Eurolines Shipping Co., S.A. v. Metal Transp. Corp.*
    491 F. Supp. 590 (S.D.N.Y. 1980) ...............................................................................6

*General Drivers, Warehousemen & Helpers v. Riss & Co.*
    372 U.S. 517 (1963)......................................................................................................4

*International Union, United Automobile, Aerospace and Agricultural Implement Workers
    et al v. New United Motor Manufacturing, CV 08-1242 THE* ....................................1

*Kerr Mc-Gee Ref. Corp. v. M/T Triumph*
    924 F.2d 467 (2d Cir. 1991)..........................................................................................6

*Local Union 15, IBEW v. Exelon Corp.*
    2004 U.S. Dist. LEXIS 6193 (N.D. Ill. Apr. 7, 2004) .................................................5

*Marine Products Export Corp. v. M.T. Globe Galaxy*
    977 F.2d 66 (2d Cir. 1992) .......................................................................................6, 12

*McGuire, Cornwell & Blakey Girder,*
    771 F. Supp. 319, 320 (D. Colo. 1991).......................................................................11

*Millmen's Local 550, United Brotherhood of Carpenters & Joiners v. Well's Exterior
    Trim*
    828 F.2d 1373 (9th Cir. Cal. 1987)...........................................................................5, 6

ii

Table of Authorities
(continued)

Page

*Orion Pictures Corp. v. Writers Guild of America, West, Inc.*
    946 F.2d 722 (9th Cir. Cal. 1991).................................................7

*Public Serv. Elec. & Gas Co. v. System Council U-2*
    703 F.2d 68 (3d Cir. 1983)....................................................5

*Reddam v. KPMG LLP*
    457 F.3d 1054 (9th Cir. 2006) ...............................................11

*Steelworkers*, 80 S. Ct. at 1352-53...........................................15

*Szuts v. Dean Witter Reynolds, Inc.*
    931 F.2d 830 (11th Cir. 1991) ...............................................3

*Trade & Transport, Inc. v. Natural Petrol. Charter.*
    931 F.2d 191 (2d Cir. 1991)..............................................6, 12

*Universal Reinsurance Corp. v. Allstate Ins. Co.*
    16 F.3d 125 (7th Cir. 1994) ...............................................15

*Zechman v. Merrill Lynch et al.*
    742 F. Supp. 1359 (N.D. Ill. 1990) ........................................11


**FEDERAL STATUTES**

9 USC § 5..................................................................12

9 USC § 10(a)(4)....................................................... passim

§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185 .............4, 5, 7


**OTHER AUTHORITIES**

22A Fed. Procedure § 52:2022 ................................................5

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE

SF1 28323782.1

## I.    INTRODUCTION

In the interest of brevity, NUMMI will not reargue all of the points made in its Opposition to Plaintiff's Motion for Summary Judgment in the companion case (08-1242), as most of the issues addressed in that brief are essentially the same issues before the Court as to this Petition. NUMMI respectfully asks the Court to review that Opposition because it analyzes the main points of the basis for the Petition to Vacate.

To summarize again the issues, NUMMI's Petition to Vacate involves two legal questions that are, in large part, issues of first impression in the Ninth Circuit (at minimum). Specifically, they are:

> *Issue 1:* Is a labor arbitration decision subject to vacation under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 and/or Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, where one or more of the following are true, the single arbitrator has: i) been selected to hear the entire grievance at some point as expressly required by the written arbitration agreement, ii) been empowered by the parties to decide the entire grievance and in the word of Plaintiffs' own counsel enter a "final and binding" decision as to the entire grievance at some point, iii) accepted jurisdiction over an entire grievance and agreed to decide the entire grievance in a final and binding matter at some point, and yet, fails to complete his mandate and decide the entire grievance at some point before quitting?[1]

> *Issue 2:* Does an arbitrator exceed his authority under the FAA and/or Section 301 by ordering as a "remedy" that the parties arbitrate parts of the dispute with another arbitrator where the contract clearly provides for only one arbitrator to enter a "final and binding" decision as to an entire grievance, one arbitrator is agreed on and accepts jurisdiction over the entire grievance, and that one arbitrator is not granted any authority to divide up the grievance between multiple arbitrators without retaining any jurisdiction?

Stated differently, in a nutshell, this case involves the somewhat novel issue of what happens when the parties bargain for one arbitrator to decide an entire case at some point, select an arbitrator on the premise he will decide the entire case, submit the entire case to his

---

[1] The UAW argues extensively in its Opposition to NUMMI's Petition to Vacate, that this issue has been decided. NUMMI disagrees and believes that the cases cited are distinguishable, for reasons to be discussed in NUMMI's Reply to the UAW's Opposition to the Petition to Vacate. However, even if they are comparable, it is clear that the issue has not been decided in the Ninth Circuit, and NUMMI thinks that it should be decided differently in this Circuit as to labor arbitrations, for the reasons partially noted herein and to be discussed in NUMMI's Reply.

SF1 28323782.1

1  jurisdiction, he agrees to decide the entire case, but then quits halfway through and purports to

2  "pass the buck."

3      Labor arbitration is unique, and is, in effect, a compromise between parties with an

4  ongoing working relationship.  In that context, the parties must compromise in picking an

5  arbitrator, and the parties generally (and specifically in this case) make that compromise under

6  the premise that the arbitrator selected will hear the case and decide all the issues (as was

7  expressly stated in the record and recognized by the arbitrator).[2]  There are a variety of reasons to

8  have one arbitrator hear an entire case, including the need for consistency, the expense of

9  multiple arbitrators and arbitrations, the nature of the parties' relationship in the labor context,

10  the tendency of arbitrators to try to make their discrete decisions balanced within a particular

11  case and over time (i.e., splitting the baby), and the need for the arbitrator to fit the remedy to the

12  violation after sitting through the entire case.

13      But, these reasons are really secondary to the simple fact that NUMMI and the UAW

14  bargained for, and agreed on, one arbitrator to hear their cases generally, and specifically in this

15  case, and where the parties did not get what they bargained for, they are entitled to an arbitrator

16  who will fulfill his mandate. *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir.

17  1991) ("the provision of the arbitration agreement that 'any arbitration hereunder shall be before

18  at least three arbitrators' means what it says: any contract-related controversy . . . must be

19  arbitrated by no less than three arbitrators").  In essence, in labor arbitration the value of the total

20  package (one arbitrator to decide the whole case) is more than the value of the constituent parts

21  (interim decisions), and the parties in this case bargained for, and compromised on, someone to

22  decide the total package.  Section 10(a)(4) addresses, among other things, this situation where

23  the arbitrator manifestly has failed to fully and completely decide the matter submitted to him (in

24  one or more hearings).

---

26  [2] Indeed, it is particularly interesting that NUMMI earlier on has suggested that the parties get a

27  new arbitrator, but the UAW had flatly refused stating that this Arbitrator had to decide the entire case to the bitter end. It now, without comment, has taken exactly the opposite position by arguing that any arbitrator will do.

1  II.    **ARGUMENT**

2      A.    <u>**The Decisions Are "Appealable" Because the Arbitrator Quit.**</u>[3]

3          The general rule is that an arbitration decision cannot be reviewed by the court until it is

4  final.  *See, e.g., General Drivers, Warehousemen & Helpers v. Riss & Co.*, 372 U.S. 517, 519

5  (1963) (Court cannot review an arbitration award under § 301 of the Labor Management

6  Relations Act, 29 U.S.C. § 185, unless the award is final and binding) (per curiam).

7          The parties agree that the decisions at issue are "final" in the sense that they can be

8  vacated or confirmed by the Court, but disagree as to the reasons for that finality.  As NUMMI

9  indicated in its Petition, the fact that Arbitrator quit should make his decisions final in the sense

10  of appealable.  Once the arbitrator thinks he or she is done, he or she is, in fact, done, and his or

11  her decision(s) should be appealable at that point.  The question then becomes do the arbitrator's

12  decisions collectively satisfy Section 10(a)(4) in the sense that the arbitrator fully and completely

13  decided all issues within his or her authority .

14      B.    <u>**The Bifurcation of Hearings Is Not the Dispositive Issue In Terms Of Determining Whether the Decisions Can Be "Appealed."**</u>

15          The UAW does not seem to dispute NUMMI's rationale on the issue of whether the

16  decisions can be appealed because the arbitrator quit, but it also asserts the theory that the

17  decisions are final because the parties agreed to bifurcate the hearings.  NUMMI normally would

18  not spend significant time on this issue (since the parties agree on the final result--the decisions

19  are subject to review).   However, the reasons for the "appealability" of the decisions are

20  potentially important because the UAW's argument cleverly conflates what should be legally

21  distinct issues—finality for appeal as opposed to satisfaction of Section 10(a(4).  *See, e.g.,* Opp.

22  8:1-3, 10-12.  With that in mind, the UAW's "bifurcation" argument is misplaced for several

23  reasons.

24

25

26
_____

27  [3] NUMMI uses the term "appealable" to mean subject to judicial review pursuant to either a Petition to Vacate or Petition/Complaint to Confirm.

28

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE

SF1 28323782.1

1          1.    The Exception Asserted by the UAW is Not "Well Established."

2          First, it is not "well established" as the UAW asserts that bifurcation of the liability and

3   remedy proceedings automatically makes a decision final.  Indeed, the presumption is that

4   arbitration decisions are not final until all issues have been decided, as discussed above.  *Public*

5   *Serv. Elec. & Gas Co. v. System Council U-2*, 703 F.2d 68, 69-70 (3d Cir. 1983) (parties to a

6   labor arbitration had agreed to bifurcate the determination of liability and remedy but court held

7   that that the determination of liability alone was not a final and binding award reviewable under

8   section 301); *see* 22A Fed. Procedure § 52:2022 (Lawyers Ed. 2003) ("Generally, a District

9   Court may review an arbitrator's rulings pursuant to 29 U.S.C.A. § 185 only after there is a final

10  award containing findings as to liability and as to the remedy.").  As the Ninth Circuit noted

11  approvingly, the "Second Circuit has held that an arbitration award under the Federal Arbitration

12  Act, is a reviewable final order only if intended by the arbitrator to be a complete determination

13  of the claims, including the issue of damages." *Millmen's Local 550, United Brotherhood of*

14  *Carpenters & Joiners v. Well's Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. Cal. 1987)  *citing*

15  *Michaels v. Mariforum Shipping*, 624 F.2d 411, 413-14 (2d Cir. 1980)  *see also Local Union 15,*

16  *IBEW v. Exelon Corp.*, 2004 U.S. Dist. LEXIS 6193 (N.D. Ill. Apr. 7, 2004) ("an award that

17  leaves substantive tasks for the arbitrator to perform--namely, the determination of a remedy is

18  not final." (internal quotations/citations omitted)).

19         The liability/remedy bifurcation exception to this finality rule asserted by the UAW is a

20  limited exception that appears to have been used almost exclusively in non-labor panel

21  arbitration cases under limited, factual scenarios not present in this case.  The Ninth Circuit has

22  not adopted (or rejected) this exception, and contrary to the UAW's suggestion the *Millmen's*

23  court said it was not addressing the issue.  Specifically, the Ninth Circuit said, "The Court's

24  opinion, therefore, holds only that the arbitrator need not complete the mathematical

25  computations of the award for the award to be final and reviewable. It does not decide whether

26  the determination of liability with retained jurisdiction to decide the remedy is a final and

27

28

1  reviewable award." *Millmen's Local 550, United Brotherhood of Carpenters & Joiner*, 828 F.2d

2  at 1377.[4]

3          2.    The Facts Supporting Such an Exception Are Not Present in this Case.

4       Second, the cases that have applied a liability/remedy exception to the final order rule, do

5  not appear to involve situations where the arbitrator (or entire panel) simply quit halfway through

6  the case, where there were significant substantive issues remaining, or where the parties had

7  agreed that the arbitrator would decide the entire case. They also generally do not involve labor

8  cases where an arbitrator must operate in the context of an ongoing relationship between the

9  parties.

10       The UAW for example cites *Trade & Transport, Inc. v. Natural Petrol. Charter.*, 931

11  F.2d 191 (2d Cir. 1991). However, in that case, a majority of the Panel was intact, the reason for

12  the Panel's membership shortfall was an unexpected death, and the damage issue being reserved

13  related to simply calculating amount. As the Second Circuit itself suggested, the *Trade and*

14  *Transport* case is best viewed as an exception to the general rule that if an arbitration panel

15  member dies before issues a final decision, the panel must begin anew. *Marine Products Export*

16  *Corp. v. M.T. Globe Galaxy*, 977 F.2d 66, 68 (2d Cir. 1992) ("In the present case, Simms died

17  prior to the panel's rendering of any award. Neither the charter party nor the February 1984

18  agreement submitting the controversy to the original panel made any provision for the filling of a

19  vacancy caused by the death of one of the arbitrators. Absent any special circumstances,

---

[4] Another exception to the final judgment rule that a couple of courts have recognized occurs where the parties have dealt with both liability and remedy as to a completely separate and independent cleanly divisible claim. *Kerr Mc-Gee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) ("An award that finally and conclusively disposes of a 'separate independent claim' may be confirmed even if it does not dispose of all the claims that were submitted to arbitration."; an award disposes of a separate and independent claim only if it resolves both liability and damages.); *Eurolines Shipping Co., S.A. v. Metal Transp. Corp.*, 491 F. Supp. 590, 592 (S.D.N.Y. 1980) (confirming arbitrators' partial final award because it finally resolved both liability and damages for a separate, independent claim, i.e., immediate payment of withheld freight under a charter). These cases do not apply here because the Arbitrator did not decide liability and remedy as to independent claims. Rather, all of the issues he addressed were sub-issues within the broader time for time subject matter submitted to his jurisdiction.

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE
SF1 28323782.1

therefore, the general rule should apply here.  In *Trade & Transport,* we concluded that the general rule was not controlling because of the special circumstances of that case.").

Moreover, as discussed further below, the instant case does not involved mere calculation issues; it involves remaining significant substantive questions that are deeply intertwined with the issues addressed in the earlier hearings.  Thus, this case is very different from the cases in which such a bifurcation rule has been adopted.

> 3.    The Vast Exception Proposed by the UAW is Contrary to the Final Judgment Rule

Third, the universal "any bifurcation = final decision rule" in labor cases espoused by the UAW cannot be the law, because if true, then in virtually every single labor case one party could appeal before remedy had been decided—because in labor cases "remedy" is almost always separated from liability.  This is exactly contrary to the intent of the final judgment rule, which is designed to prevent piecemeal appeals.  *See Public Serv. Elec. & Gas Co. a*  69-70 (description *supra).*[5]  In other words, the rule espoused by the UAW, that a decision is "final" for purposes of appeal merely because the parties have bifurcated the hearings, would swallow the general rule whole.  So contrary to the UAW's claim, what makes this case "appealable" is the fact that the Arbitrator quit, which made his interim decisions appealable, not the fact that the parties bifurcated the issues. *See Orion Pictures Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722, 724 (9th Cir. Cal. 1991) ("[w]here an arbitrator retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction "indicates that the arbitrator did not intend the award to be final." ).  In short, had the Arbitrator not quit, but rather retained jurisdiction as the contract and parties expressly instructed him to do, this case would not be ripe for the instant Petition (or the UAW's collateral action).

---

[5] Indeed, to the extent that the Court were inclined to find that bifurcation of remedy from liability, without more, does create a final order under the FAA, this may be one of the rare situations where Section 301 should pre-empt a contrary rule under the FAA, given that bifurcation is the rule, rather than the exception in labor cases.  Again, however, the Court probably does not need to reach that issue because the decisions are final (in the sense of appealable) in this case because the arbitrator quit.

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE

SF1 28323782.1

1    Having said that, again, the precise reasons for "finality" would ordinarily not be

2    important (since both parties agree the decisions are appealable), except that in its Opposition the

3    UAW confuses the issue of whether an award is final for purposes of appeal with the issue of

4    whether an award satisfies Section 10(a)(4) of the Federal Arbitration Act. Opposition at 9:22.

5    They are not the same issue in every case (although they could be in some), and more

6    particularly, they are not the same issue in this case.

7    **C.    The Remaining Issues in the Arbitration are not Purely Ministerial.**

8    Plaintiff seems to be arguing that determining damages in this case would be simple,

9    perhaps in an attempt to make this case seem like *Millmen* where the damages calculation was a

10   purely ministerial function. The UAW's argument is misplaced.

11   Indeed, it is not "plain" what the second award requires, as Plaintiff asserts. Opposition at

12   10:18. There are at least two significant substantive issues left, setting aside the whole issue of

13   remedy, as the Second Opinion recognizes: i) how must the "time for time" leave be calculated

14   under the CBA; ii) does the CBA or some other body of law allow NUMMI to terminate benefits

15   of people on sick leave at a certain point even if it must retain them as nominal employees, and if

16   so, which benefits must be retained if any. *Ex. 2* to Petition at 23 fn 5 and 6. *2* in the Appendix

17   of Supporting Evidence, on file in this case.

18   Moreover, if reinstatement was what the award "plainly" required then it would have

19   been a simple matter to order it; the Arbitrator did not, which suggests that "remedy" is not as

20   plain as the UAW would lead the Court to believe. In any event, however, it is clear that this

21   case does not involve a situation where the only thing left for an Arbitrator to do is order

22   reinstatement. There are specific unresolved issues that the Arbitrator was picked to resolve, but

23   that he failed to resolve.

24   **D.    The Fact that the Awards are Appealable Does not Decide the Section 10(a)(4) Issues.**

25   The UAW argues that Askin decided all issues submitted to him in a particular hearing,

26   so his awards are final for purpose of appeal and since they are appealable they collectively do

27   not violate Section 10(a)(4). Again this argument seems to "mix apples and oranges" as the

28

issue of when something is final for purposes of appeal cannot always be the same as the issue of whether Section 10(a)(4) is violated (since Section 10(a)(4) could never be violated if the issues were coextensive because the party appealing would never clear the first "appealability" hurdle). Again, the appealbility issue addresses whether it is a proper time to appeal an award, and Section 10(a)(4) addresses the arbitrator's exercise or not of his or her powers.

**E.**    **Section 10(a)(4) Requires a Complete and Final Decision as to the Subject Matter Over Which the Arbitrator Has Jurisdiction.**

Aside from ignoring the parties' agreement and the preconditions to the arbitrator's authority, the UAW's argument seems to ignore the actual language of Section 10(a)(4). The statues provides that an award may be vacated for various reasons including fraud, corruption, or misconduct by the arbitrator, or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the *subject matter submitted* was not made." 9 USC § 10(a)(4) (emphasis added). What the UAW wants to argue (without specifically saying so) is that "subject matter submitted" does not mean subject matter submitted to the arbitration or submitted to the arbitrator, it means argued in a particular hearing. The Second Circuit seemed to disagree when it said that what Section 10(a)(4) means is that "[a]n award is mutual, definite and final if it 'resolve[s] *all issues submitted to arbitration*, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties.'" *ConnTech Dev. Co. v. Univ. of Conn. Educ.*, 102 F.3d 677, 686 (2d Cir. 1996) (quotations omitted) (emphasis added). It is undisputed that the Arbitrator in this case did not decide all issues submitted to arbitration nor did he leave the parties in a position where no further litigation was necessary.

Further, Section 10(a) in its totality is clearly directed to issues of the arbitration as a whole after it is over (except in rare circumstances). Section 10(a)(4) gets directly to the core of the issue of whether the arbitrator did what he was supposed to do, at the end of the day. The UAW completely ignores the fact that the Arbitrator ultimately did not do what he was supposed to do in the case, which was to decide eventually the entire grievance that was the subject matter of the arbitration in a full, definite, and final way. Instead, he purported to order further

9

SFI 28323782.1

1   arbitration with someone else, which he had no authority to do.  Under the circumstances, the

2   parties did not get what they bargained for, the express terms of the agreement were not

3   followed, and the decisions must be vacated under Section 10(a)(4) and remanded to the parties

4   for selection of an arbitrator who will (hopefully) fulfill his or her entire mandate and issue (in

5   one or more opinions) a final, definite and mutual decision.[6]

6            F.      **Bifurcation of the Hearings is Not the Dispositive Issue.**

7            Again, Plaintiffs repeatedly argue that having agreed to bifurcate the hearings, NUMMI

8   cannot complain if the arbitrator did not decide all issues. NUMMI addressed this in its MSJ

9   Opposition, but to reiterate: NUMMI is not complaining that the Arbitrator did not fully and

10  finally decide the remedy issue in the second hearing.  NUMMI is complaining that the arbitrator

11  quit before deciding all issues and instead, issued an order requiring further arbitration <u>with</u>

12  <u>someone else</u>.

13           Once the Arbitrator accepted jurisdiction he had an obligation under Section 10(a)(4) to

14  decide the entire case <u>at some point</u> in a final and binding matter so that both parties were clear

15  as to their obligations. 9 USC § 10(a)(4).  He did not do so.  Clearly, if he has simply left the

16  parties to work out the outstanding issues retaining jurisdiction to decide an disputes, not only

17  would his decisions not be final (and thus not appealable), NUMMI would have no basis to argue

18  a violation of Section 10(a)(4) (unless he later refused to address remedy).

19           Moreover, a fundamental problem with the UAW's argument is that the remaining issues

20  are heavily intertwined with the issues decided and may involve substantive issues of contract

21  interpretation.  In other words, this is not a classic "remedy" case, but rather a case where at least

22  two of the potentially remaining issues--the length of time for time leave and the issue of benefits

23  continuation--are more like liability questions than damages.  One simply cannot neatly divide

24

25  [6] The UAW argues that it is not "fair" to deprive it of its "victories" in the first two hearings.
    However, the same argument could be made in every Section 10(a)(4) case (except those that
26  were completely incomprehensible).  More importantly, it is equally unfair for NUMMI not to
    get what it bargained for, what has always been the practice of the parties, what the contract
27  required, and what the Arbitrator said he would do.  The UAW wants the upside of decisions
    where the authority of the arbitrator was conditioned on certain bargained for premises that he
28  did not fulfill.

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE

SF1 28323782.1

1    the issues in this case along traditional "liability" and "remedy" lines, which makes the UAW's

2    "bifurcation" argument even more inapposite.

3        **G.    The UAW Arguments About Forum Unavailability Are Off Point.**

4            To reiterate, the UAW asserts that "NUMMI seeks to avoid its contractual obligation to

5    arbitrate because the arbitrator who issued those awards has resigned." (Plaintiff's Motion 16:1-

6    2). They then argue that forum unavailability is not a basis to refuse to arbitrate, citing the

7    decision in *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006).

8            Again, however, the UAW argument is not accurate as to the facts, and not relevant as to

9    the law. NUMMI has never refused to arbitrate, and the *Reddam* case has no bearing on is case.[7]

10   *Reddam* involves a case where one party, KPMG, was completely refusing to arbitrate because

11   the NASD had declined jurisdiction at the outset. KPMG argued that the parties' contract

12   required arbitration before a particular forum, and if the forum declined, <u>there was no duty to</u>

13   <u>arbitrate anything--the plaintiff was just out of luck</u>. The Ninth Circuit rejected that argument

14   primarily because it did not find that the alleged forum selection provision in the arbitration

15   clause said what KPMG claimed it said . In this case, by contrast, NUMMI is not arguing it has

16   no duty to arbitrate, nor is it refusing to arbitrate. As discussed in NUMMI's Opposition, its

17   argument is different, and the forum unavailability cases are simply not germane.

18       **H.    The Panel Arbitration Cases Cited by Plaintiff Support NUMMI's**
             **Argument.**

19           The UAW also cites several cases where the Courts have upheld substitution of one panel

20   member before the end of an entire arbitration. These cases are distinguishable, but

21   interestingly, if anything, the general principle they address supports NUMMI's argument. First,

22   the general rule is that if a panel arbitrator dies or becomes unavailable before a case is decided

23   in its entirety, the panel must start again absent some agreement to the contrary. *See, e.g.,*

24

25   _____

26   [7] Similarly, the other cases cited by Plaintiffs all involve situations where one party claimed no
     duty at all to arbitrate because the forum declined jurisdiction before the arbitration began or a
27   decision was issued. *See, e.g., McGuire, Cornwell & Blakey Girder*, 771 F. Supp. 319, 320 (D.
     Colo. 1991); *Zechman v. Merrill Lynch et al.*, 742 F. Supp. 1359, 1363 (N.D. Ill. 1990); *Astra
28   Footwear Indus. v. Harwyn Int'l Inc.*, 442 F. Supp. 907, 910-11 (S.D.N.Y. 1978).

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE
SF1 28323782.1

1    *Marine Products Export Corp.*, 977 F.2d at 68; *Cia de Navegacion Omsil, S.A. v. Hugo Neu*

2    *Corp.*, 359 F. Supp. 898, 899 (S.D.N.Y. 1973).  The rationale for this rule is presumably that the

3    panel acts as a group, the parties bargained for a panel, one panel member often advocates for

4    one party, and it is not appropriate to "parachute in" a new arbitrator before a case is decided.

5    *See generally Cia De Navegacion Omsil, S. A.*, 359 F. Supp. at 899

6          The FAA arguably created, and some courts have recognized, a partial exception to this

7    rule.   *See* 9 USC § 5; *Trade & Transport, Inc.*, 931 F.2d at 196.  *But Cf. see also Ayrshire*

8    *Collieries Corp. v. United States,* 331 U.S. 132, 139 (1947) (three judge panel cannot issue order

9    with one judge missing). Specifically, where one arbitrator becomes unavailable after hearings

10   are held and discrete interim decisions have been made as to those issues heard to date, then that

11   one arbitrator can be replaced.  From an arbitral efficiency and fairness standpoint this rule may

12   make sense, because i) everyone knows going into the arbitration that this is probably the rule

13   (so they can make other arrangements if desired, and if they fail to do so, it can be assumed that

14   they agreed to this rule); ii) the panel itself as an entity still contains 2/3 of the original members

15   who participated in the prior hearings and deliberations and can educate the new member as to

16   the meaning, rational, thought processes and equities of earlier decisions--the parties are not

17   starting from scratch with a whole new panel, and iii) this rule is generally applied to situations

18   were a panel member dies, so it is not a case where the panel just fails to fill it original mandate.

19         None of these facts apply to this case.  The parties have lost the entire decision maker

20   (not just 1/3 of him), he did not quit for reasons beyond his control, and there was no

21   understanding going in that he could fail to decide everything in his authority.  To the contrary,

22   the Union strenuously objected to NUMMI's suggestion that the Arbitrator be replaced after the

23   first arbitration presumably on the premise that he had to decide everything once he was selected.

24   Geannacopulos Decl. ¶¶ 2-3  (filed in companion case).  Further, allowing the arbitrator the

25   power to avoid deciding the issues in his jurisdiction and basically pick and chose issues and

26   then pass the rest off, will not in the long run lead to greater arbitral efficiency.

27         In short, the general rule that if a panel quits midstream (or more than one member

28   leaves), the case must start over, is actually more akin to the present situation.  In this case, as in

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE

1  those panel cases, the parties have lost all the bargained for benefits that go with having the same

2  decision-maker decide all issues after having personally sat through all of the witnesses, poured

3  over the evidence, and observed the demeanor and other issues that affect the equities of a

4  particular arbitration.

5      It is worth noting, again, that NUMMI's argument is not "bizarre" as the UAW asserts.

6  For example, the rules of the American Arbitration Association  require the same result.  AAA

7  Labor Arbitration Rules at 18.  While the AAA rules obviously do not govern this situation, they

8  are persuasive evidence of the general principle, also embodied in Section 10(a)(4), that once an

9  arbitrator accepts jurisdiction over a dispute he or she must finish it as promised and issue a final

10  and binding decision as to all matters over which he/she has jurisdiction.  Where he or she does

11  not do so, rearbitration is the required result.

## I.      Remand is Not Appropriate.

14      The Union claims that the matter could simply be remanded to the Arbitrator to decide

15  the remedy, and suggests that this fact makes NUMMI's petition "strange" and "unpersuasive."

16  The UAW cites to the *Clarendon Nat'l Ins. Co. v, TIG Reins Co,*  990 F. Supp. 2d 304, 311

17  (S.D.N.Y. 1998) for the remand principle.[8]   However, the *Clarendon* case involves different

18  facts.  In that case, the Arbitration Panel had not resigned without expressly deciding every issue

19  it had agreed to decide.  Indeed, there is nothing in the decision to suggest that the Panel had

20  intentionally refused to decide an entire class of issues it had agreed to decide.  Rather the Panel

21  had purported to decide the damages and remedy as to claims given to it, and felt that it had done

22  so, even though one party disagreed.  The Court agreed in part with the Panel, but found that it

23  had failed to address specific damage issues, and so remanded for that purpose.

24      The situation was very different from the present where the Arbitrator has clearly and

25  expressly relinquished all authority without deciding an entire class of issues.  Unlike the

26

27  [8] It is hard to tell what parts of the case the UAW is citing and the pin cites do not appear in the
   *Clarnedon* case.

28

NUMMI'S REPLY BRIEF IN SUPPORT OF PETITION TO VACATE

SF1 28323782.1

1  *Clarendon* panel, there is nothing in this case to suggest that the Arbitrator mistakenly failed to

2  address an issue. Rather, he quit, and once he quit his authority ended, and as a practical matter,

3  the Court would have no authority, at this point, to order him to revisit the issue. In short, it

4  would be inappropriate to remand to an arbitrator who has clearly stated that he is done.

5      **J.    The Arbitrator Had No Authority To Order Further Arbitration**

6          The UAW seems to agree that the Arbitrator had only such authority as was granted him

7  by the parties or contract. He cannot order a remedy that is not authorized, as the contract clearly

8  states. The UAW seeks to enforce the remedy he ordered, which was to arbitrate with someone

9  else the issue of remedy. He had no power to make that order, as it was not authorized by the

10  agreement, practice, or understanding of the parties or arbitrator. Thus, the Court should vacate

11  the awards and remedy he entered as exceeding his authority.

12          Again, this is not an esoteric point of law. The arbitrator is exercising authority that he

13  did not have and that is inimical to the purpose of arbitration and his selection to decide the

14  entire case. He cannot order the parties to arbitrate with someone else. NUMMI is willing to re-

15  arbitrate the case as a whole, but this is very different from following his improper order to just

16  arbitrate remaining issues. This is particularly true given that there a significant contract

17  interpretation issues that need to be resolved, which even the UAW seems to recognize are

18  heavily intertwined with liability and damage issues (as they tried to raise at least one of them

19  during the last hearing). He had no authority to make such an order.

20  **III.    CONCLUSION**

21          The primary purpose of the FAA is to ensure "that private arbitration agreements are

22  enforced according to their terms.'" *Beers Constr. Co. v. Pikeville United Methodist Hosp. of*

23  *Ky., Inc.*, 129 Fed. Appx. 266, 272 (6th Cir. Ky. 2005) *quoting Volt Information Sciences, Inc. v.*

24  *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989). The

25  arbitration agreement required, and the parties agreed on the record, that the terms in this case

26  were one arbitrator would hear the entire case at some point, whether in one or more hearings.

27  The decision, and explicit agreement, to pick one arbitrator to hear the entire dispute was not

28  some ill considered throwaway agreement (and even if it was, NUMMI would still be entitled to

1    enforce it).  Indeed, the Supreme Court has recognized the central importance in the labor

2    context of the arbitrator selection issue.  *See Steelworkers*, 80 S. Ct. at 1352-53 ("The labor

3    arbitrator is usually chosen because of the parties' confidence in his knowledge of the common

4    law of the shop <u>and their trust in his personal judgment to bring to bear considerations which are</u>

5    <u>not expressed in the contract as criteria for judgment</u>.").

6         In this case, it is undisputed that the Arbitrator did not fulfill the terms of his assignment

7    of the parties' agreement.  Rather, he failed, at the end of the day, to decide all issues related to

8    the arbitration as he agreed when vested with authority.  NUMMI is entitled to have the parties'

9    agreement enforced as to its terms, and enforcing  the agreement as to its terms, in the long run,

10   will avoid exactly the type of piecemeal litigation that the Arbitrator's abrupt exodus has created.

11   *See Universal Reinsurance Corp. v. Allstate Ins. Co.*, 16 F.3d 125, 130 (7th Cir. 1994) ("To

12   substitute our notion of fairness in place of the explicit terms of [the parties'] agreement would

13   deprive them of the benefit of their bargain just as surely as if we refused to enforce their

14   decision to arbitrate.").

15        Moreover, the remaining issues are many, and do not merely involve a ministerial

16   calculation of damages.  As noted above, there are potentially significant contract interpretation

17   issues that the Arbitrator left undecided related to the length of the time for time leave, the

18   separate issue of medical benefits under the contract and NUMMI's right to terminate those,

19   among other things.  Thus, it is particularly inappropriate in this case, where there is not a simple

20   ministerial remedy at issue, for the parties to be denied the benefit of their bargain, which was

21   one arbitrator to decide the entire case.

22        Based on the foregoing, NUMMI respectfully asks the Court to enter judgment in favor

23   of NUMMI as to NUMMI's Petition to Vacate.

Dated:  May 23, 2008

SEYFARTH SHAW LLP

By

Christian J. Rowley
Attorneys for Plaintiff
NEW UNITED MOTOR
MANUFACTURING INC.

15