**United States District Court**
For the Northern District of California

1

2

3

4     IN THE UNITED STATES DISTRICT COURT

5     FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7     NEW UNITED MOTOR
      MANUFACTURING, INC.,                      NO. C 08-0976 TEH
8
                        Movant/Petitioner,      ORDER DENYING
9                                               PETITION TO VACATE
                                                ARBITRATION AWARD
10         v.

11    UNITED AUTO WORKERS LOCAL
      2244,
12
                        Respondent.
13

14

15

16          This matter came before the Court on June 17, 2008 on a Petition to Vacate an

17    Arbitration Award by New United Motor Manufacturing, Inc. ("NUMMI").   NUMMI

18    argues that the Court should vacate an arbitration award which found that its sick leave

19    policy violates its collective bargaining agreement with the Respondent union, and which

20    directed the parties to proceed before a different arbitrator to determine the remedy for the

21    violation.  The Court has carefully reviewed the parties' written and oral arguments and the

22    evidence submitted in this motion.  The Court has also considered, where appropriate,

23    pleadings and evidence filed in support of and in opposition to the Union's Motion for

24    Summary Judgment in the related case seeking confirmation of the award, Case No. C-08 -

25    1242.

26          For the reasons set out below, the Petition is DENIED.

27    //

28    //

1  **FACTUAL AND PROCEDURAL BACKGROUND**

2      New United Motor Manufacturing, Inc. is, by its own description, the "last surviving

3  auto manufacturing company west of the Rocky Mountains."  Petition ("Pet.") at 6.  It

4  employs several thousand workers represented by the International Union, United

5  Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").

6                **The Collective Bargaining Agreement and the Sick Leave Dispute**

7      The UAW and its local affiliate, UAW Local 2244 ("Union"), are parties to a

8  collective bargaining agreement ("CBA") with NUMMI.   The CBA contains numerous sick

9  leave provisions.  CBA Art. XXIII, § 9 *et seq.*   Until 2005, NUMMI did not necessarily

10  terminate an employee's sick leave once his or her medical condition became permanent, and

11  instead allowed employees to remain on sick leave for the duration of their "time for time"

12  leave period (equivalent to the employee's  seniority) under Article XXIII § 9.3 of the CBA.

13  In 2005, however, NUMMI implemented a new sick leave policy.  Pursuant to that policy,

14  NUMMI terminated approximately 100 employees who had been out on sick leave but

15  whose "time for time" leave had not yet expired.

16      NUMMI claimed that the policy was justified by a 1990 decision by arbitrator Paul

17  Staudohar ("the *Staudohar* Decision"), which involved whether an employee could be

18  terminated from sick leave (and his or her seniority "broken") once a temporarily disabling

19  medical condition become permanent.[1]  The Union, however, maintained that the new policy

20  violated Art XI, § 3 and Art. XXIII § 9.3 of the CBA, and that the *Staudohar* Decision had

21  dealt only with a different section of the CBA's sick leave provisions that governed only

22  those with industrial injuries  (Art. XXIII, § 9.4).

23      The CBA sets out a dispute resolution procedure for certain disagreements which

24  culminates in binding arbitration.  CBA Art. X, § 7.1.  The Union filed a grievance about the

25  sick leave dispute, and the parties selected Arbitrator Charles Askin "for a final binding

26  arbitration."  Reporter's Transcript of August 14, 2006 Arbitration Hearing ("8/14/06 RT") at

27  14.

28          [1]  NUMMI in fact called the new sick leave policy the "Staudohar Program."

United States District Court

For the Northern District of California

**2006 Evidentiary Hearing**

Arbitrator Askin held a hearing on August 14 and 15, 2006.  *Id.* at 1.  The parties stipulated to the following issues:

> 1.    Is the Company's policy regarding long-term leaves of absence consistent with Article XI, Section 3 and Article XXIII, Sections 9.3 and 9.4 of the collective bargaining agreement as interpreted by, among other things, the Staudohar arbitration decision, and if it is not consistent, what is the proper remedy?
>
> 2.    Are the people on the attached list eligible to participate in the Company's 2006 Early Retirement Program?

Arbitration Opinion and Award, November 24, 2006 ("Opinion and Award") at 2.

The bulk of the parties' arguments focused on the substantive liability issues: whether the *Staudohar* arbitration governed evaluation of the leave policy, and whether the leave policy was consistent with the CBA.   But the Union also asked that the Arbitrator address "conceptual" remedy issues, specifically "how to calculate the time-for-time clock," because the parties would have to address the "critical question" of "how long the time-for-time clocks are" to calculate make-whole relief for employees terminated pursuant to the new sick leave policy.  8/14/06 RT at 37, 38, 43.[2]   NUMMI, on the other hand, wanted to save the remedy issue "for another day which is the usual process," arguing the parties should "come back" to argue the remedy aspect "[i]f there's a remedy." "[W]e're not really prepared to deal with a remedy case here."  *Id.* at 36-37.  As the Arbitrator later noted, "[t]he Company twice interrupted the Union's opening argument ... to lodge an objection to the Union's discussion of possible remedies."  Opinion and Award at 15.

In language that was not completely clear,[3] the Arbitrator indicated at the close of the hearing that if he found a violation, he might look at the remedy issue.  Reporter's Transcript of August 15, 2006 ("8/15/06 RT") at 274-275.  The Arbitrator requested that the parties

[2]  The Union asked for the same ruling on the "overarching" remedial issue in its post-hearing brief.  *See* Union's September 28, 2006 Arbitration Brief at 34-35 (seeking a ruling "clarifying the proper method for calculating the length of [employees'] time for time leave, specifically, that seniority for the purposes of determining time for time leave must take account of the full period of a team member's legal disability.")

[3]  "[I]f I were to find that there was a violation and that I should be looking at the remedy issue, I'm not in agreement that I shouldn't be reaching the arguments that the union is advancing."

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    address the remedy issue in post-hearing briefing, and NUMMI therefore did so

2    "reluctantly." *Id.*    Both parties had stipulated, however, that they wanted the Arbitrator "to

3    retain jurisdiction of the remedy."  Union's September 28, 2006 Arbitration Brief at 5.

4            Arbitrator Askin issued an Opinion and Award on November 24, 2006.  He began by

5    noting that although the parties had stipulated to the issues to be submitted to him, the

6    hearing and briefing showed that the parties in fact had significantly different views of the

7    "scope of the stipulated issue" – both of which were plausible interpretations of the language

8    the parties had used.  Opinion and Award at 16.  The Arbitrator held that since there was no

9    "mutual understanding of the scope of authority granted to the Arbitrator, this Opinion will

10   be limited to what both parties understood the issue encompassed," *id.*, namely, "whether the

11   Section 9.3 claim herein was previously ruled upon" in the *Staudohar* decision and therefore

12   barred by claim preclusion or common labor arbitration principles...."  *Id.* at 17.

13           He went on to hold that *Staudohar* did not reach the § 9.3 issue and therefore did not

14   govern the dispute, *id.* at 19, and that the Company's new policy was not "consistent with"

15   the actual rulings in  *Staudohar*.  *Id.*  at 20.  Given all the Opinion decided was whether

16   *Staudohar* governed, the proper remedy "is to direct a *de novo* hearing on the merits of the

17   Union's grievance."  *Id.* at 21.  Arbitrator Askin retained jurisdiction "for a reasonable

18   period," allowing the parties to agree on a different arbitrator or to request that he hear the

19   merits of the grievance.[4]  *Id.*

20           **2007 Evidentiary Hearing**

21           Arbitrator Askin held a second evidentiary hearing in June, 2007.  Reporter's

22   Transcript of June 6, 2007 Arbitration Hearing ("6/6/07 RT").  The Arbitrator opened the

23   hearing by noting that the parties had been unable to reach mutual agreement about the "issue

24           [4]  The language of the award clearly contemplated that a second arbitrator could be involved:

25           The Arbitrator will retain jurisdiction of the remedy for a reasonable period, or [sic] unless
             the parties mutually agree to proceed to a *de novo* hearing before another arbitrator mutually
26           agreed to by the parties.  In the event either or both parties request that this Arbitrator assert
             his jurisdiction and proceed to a hearing on the merits of this grievance, the Arbitrator will
27           work with the parties to schedule future proceedings or a schedule for further argument.

28   *Id.* at 21.

                                                    4

1    or issues to be submitted to the Arbitrator," *id.* at 288, and so asked the parties to set out their

2    positions.  The Union asked for a ruling on whether the new sick leave policy was invalid

3    under the CBA; it also asked the arbitrator to reach the question of how to calculate the

4    length of time for time leave.  *Id.* at 289-90, 292.   NUMMI argued that the issue of how to

5    calculate the leave "seems more like a remedy issue as opposed to a contractual issue," and

6    the remedy is "another hearing." *Id.* at 294.  The parties again agreed that "to the extent

7    further proceedings over remedy are necessary... the Arbitrator has jurisdiction." *Id.* at 295;

8    *see also id.* at 294, 296 (Union counsel notes that parties stipulated "you're going to retain

9    jurisdiction over the remedy if ... further proceedings are necessary").

10         The parties agreed to allow the Arbitrator to frame the issue in the proceeding.  *Id.*  at

11   296.  The Arbitrator then described his "philosophy" about his authority as an arbitrator at

12   length.  *Id.* at 298- 307.  He explained his belief that he had authority to decide only the

13   issues where there had been a mutual delegation of authority to him.  He described the split

14   between the "substantive" issue – whether or not employees could be terminated before they

15   exhausted their leaves under §§ 9.3 and 9.4 of the CBA –  and the remedy issue (which he

16   referred to, oddly, as the "liability" issue) – "the appropriate method of calculating

17   employees' time for time." 6/6/07 RT at 300-302.  Although he believed it made "a lot of

18   sense" to decide the issues together, he would decide only the substantive issue because

19   "[t]he Employer has not elected to give me the authority" to decide both. *Id.* at 301, 306.

20   Accordingly, the parties' post-hearing briefs focused entirely on the contract issue, *see*

21   Supplemental Opinion and Award, November 20, 2007 ("Suppl. Opinion and Award") at 8-

22   12 (summarizing parties' arguments).  The Union remarked that it had not addressed the

23   remedy "at this stage of the proceeding based on the Arbitrator's framing of the issue at the

24   outset."  Union's October 19, 2007 Arbitration Brief at 27 n.1.

25         Arbitrator Askin issued a Supplemental Opinion and Award on November 20, 2007.

26   He addressed the following question:

27         Did the Employer violate the Collective Bargaining Agreement by implementing a
            new policy regarding long-term leaves of absence and terminating certain employees

28

5

on leave before the expiration of "time for time" leave under Article XXIII, Section 9.3 of the Collective Bargaining Agreement? If so, what is the appropriate remedy? Suppl. Opinion and Award at 2. His lengthy and thoughtful opinion contained extensive discussion of applicable law about past practices, then construed Art. XXIII, § 9.3 of the CBA.

The Arbitrator concluded that NUMMI's new employment policy and consequent termination of employees who had not exhausted their full "time for time" entitlement under § 9.3 violated the Collective Bargaining Agreement. Suppl. Opinion and Award at 22, 23. He noted that although the issue statement authorized him to determine the "appropriate remedy" for any violation, NUMMI "expressly declined" to submit the leave calculation issue. He continued:

> Based on the Employer's position concerning the scope of the issue at this stage of the dispute and the Arbitrator's statements to the parties about his authority in light of the Employer's position, there was an implied understanding that any determination of an appropriate remedy, including the Union's calculation claim, would be deferred to a later proceeding on "liability" issues.

*Id.* at 23 n.6. The Award concluded that:

> The determination of the appropriate remedy, and all other outstanding issues arising from the subject grievance, are remanded to the parties for appropriate mutual resolution. Both parties shall retain the right to seek arbitral resolution of any outstanding remedial issues arising from the subject grievance before a different arbitrator, who shall be selected by mutual agreement or selected in accordance with the parties' customary method of selecting an arbitrator.

*Id.* at 23 (footnote omitted). Although the parties had authorized the Arbitrator to retain jurisdiction of the remedy, he "respectfully decline[d] that delegation of authority." *Id.* n. 7.

//

**DISCUSSION**

NUMMI petitions the Court to vacate the award on two grounds. First, NUMMI argues the Awards are fatally incomplete because the Arbitrator refused to decide the remedy issue, even though the parties authorized him to do so. Second, NUMMI contends the Arbitrator exceeded his authority by ordering the parties to proceed in front of a different arbitrator.

6

**United States District Court**
For the Northern District of California

1

2    **I.    Judicial Review of Arbitration Awards**

3          Judicial review of arbitration awards under both the FAA and the LMRA is extremely

4    narrow.   The FAA allows a district court to vacate an arbitration award only:

5          (1) where the award was procured by corruption, fraud or undue means; (2) where
          there was evident partiality or corruption on the part of the arbitrators; (3) where the
6          arbitrators were guilty of misbehavior by which the rights of any party have been
          prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly
7          executed them that a mutual, final, and definite award upon the subject matter
          submitted was not made.

8    9 U.S.C. § 10(a).[5]

9          The court's review of arbitration under § 301 of the LMRA is likewise "extremely

10   limited," *Sheet Metal Workers Intern. Ass'n, Local No. 359, AFL-CIO v. Arizona*

11   *Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988), and courts ordinarily defer

12   even more to arbitrator's decision in labor cases than in the ordinary commercial context.

13   *Huber, Hunt & Nichols, Inc. v. United Ass'n of Journeymen and Apprentices of Plumbing*

14   *and Pipefitting Industry, Local 38,* 282 F.3d 746, 754 (9th Cir. 2002).

15         The arbitrator's factual determinations and legal conclusions generally receive
          deferential review as long as they derive their essence from the contract. If, on its
16         face, the award represents a plausible interpretation of the contract, judicial inquiry
          ceases and the award must be enforced. This remains so even if the basis for the
17         arbitrator's decision is ambiguous and notwithstanding the erroneousness of any
          factual findings or legal conclusions.
18

19   *Id.* (internal citations omitted).  Nonetheless, the Ninth Circuit has "identified four instances

20   in which vacatur of an arbitration award under Section 301 is warranted: (1) when the award

21   does not draw its essence from the collective bargaining agreement; (2) when the arbitrator

22   exceeds the scope of the issues submitted; (3) when the award runs counter to public policy;

23   and (4) when the award is procured by fraud." *Sprewell v. Golden State Warriors*, 266 F.3d

24   979, 986 (9th Cir.2001).

25   ―――――――――――――

26         [5]   Courts have also adopted a narrow "manifest disregard of the law" exception under which
     a procedurally proper arbitration award may be vacated.  *Collins v. D.R. Horton, Inc.,* 505 F.3d 874,
27   879 (9th Cir. 2007).

28

**United States District Court**
For the Northern District of California

## II.    The Award Was Sufficiently Mutual, Final and Definite Within The Meaning Of the Federal Arbitration Act

NUMMI argues the Court must vacate the Awards under § 10(a)(4) of the Federal Arbitration Act ("FAA") 9 U.S.C. 1,[6] because the arbitrator failed to decide all the issues presented and so failed to issue a " mutual, final, and definite award upon the subject matter submitted." 9 U.S.C. § 10(a)(4). An award is "mutual, definite and final" under § 10(a)(4) if it resolves all issues submitted to arbitration, and determines "each issue fully so that no further litigation is necessary to finalize the obligations of the parties." *ConnTech Development Co. v. University of Connecticut Educ. Properties, Inc.* 102 F.3d 677, 686 (2nd Cir. 1996).

There is a large body of law discussing when an arbitration award is "final." But there are two senses in which an award can be "final" — it can be final for the purposes of judicial review, or "definite and final" within the meaning of § 10(a)(4), which sets out when an award can be vacated. Both parties accuse each other of conflating (and occasionally conflate) these two standards, but they are in fact distinct.

---

[6]    As NUMMI acknowledges, it is not clear whether the FAA applies directly to labor agreements. The Supreme Court recently held that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002), *citing Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). But the opinion's application to collective bargaining agreements is not settled. The Ninth Circuit has observed that "*Circuit City* did not address a CBA, and we have not considered ... its application to such agreements." *Poweragent Inc. v. Electronic Data Systems Corp.* 358 F.3d 1187, 1193 n.1 (9th Cir. 2004). The Fifth Circuit noted that "most courts, both before and after *Circuit City*, adhere to the traditional view that suits arising under Section 301 and concerning collective bargaining agreements are outside the scope of the FAA," *International Ass'n of Machinists and Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp.,* 410 F.3d 204, 208 n.2 (5th Cir. 2005) *and cases cited therein*, but some, like the Seventh Circuit, have held that FAA applies provided there is no conflict with an express provision of § 301 of the LMRA. *See, e.g., Smart v. Int'l Broth. of Elec. Workers, Local 702,* 315 F.3d 721, 724-25 (7th Cir. 2002). In any case, the FAA is often used "as a source of principles to guide formulation of a federal common law of labor arbitration under § 301," *see Glass, Molders, Pottery, Plastics and Allied Workers Intern. Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.* 56 F.3d 844, 848 (7th Cir. 1995), *citing United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987).

The Court need not resolve this question, however, because, as set out below, even if the FAA applies it does not provide a ground for vacating the award.

United States District Court

For the Northern District of California

Both the LMRA and the FAA generally require an arbitrator's decision to be "final" for a litigant to be entitled to judicial review.   A district court only has jurisdiction to confirm, vacate or correct "final and binding" arbitration awards under § 301 of the LMRA, 29 U.S.C. § 185.  *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co.,* 372 U.S. 517, 519 (1963); *Kemner v. Dist. Council of Painting and Allied Trades No. 36,* 768 F.2d 1115, 1118 (9th Cir. 1985)("a court should refrain from reviewing an arbitrator's work until a final and binding award is issued"). To be considered "final" for the purposes of § 301, "an arbitration award must be intended by the arbitrator to be a complete determination of every issue submitted." *Millmen Local 550, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir.1987).  Therefore, the Ninth Circuit has held that an award determining liability alone is not reviewable if the arbitrator retains jurisdiction to determine the remedy.  *Millmen*, 828 F.2d at 1376-77.  "By analogy to the 'final judgment' rule of [28 U.S.C.] § 1291, an arbitration award that postpones the determination of a remedy should not constitute a "final and binding award" reviewable under section 301." *Id.* at 1376; *see also Orion Pictures Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722, 724-25, (9th Cir. 1991)(award not "final and binding" for the purposes of review if the arbitrator determines only a preliminary issue).

This rule raises the question of whether the Court has jurisdiction at all to review the award here.[7]  But the finality requirement of § 301 is not an absolute bar to subject matter jurisdiction.  *See Union Switch & Signal Division American Standard Inc. v. United Electrical, Radio and Machine Workers of America, Local 610,* 900 F.2d 608, 612-614 (3rd Cir. 1990)("complete arbitration" rule is prudential, not jurisdictional);  *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir.1991)(discussing rare exceptions to finality rule).   Both parties agree the award is properly before the Court

---

[7]  Jurisdiction must stem from the LMRA, as the FAA "does not confer independent jurisdiction on the federal courts." *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1021 (9th Cir. 1991), *citing General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir.1981), *cert. denied*, 455 U.S. 948 (1982).

United States District Court

For the Northern District of California

1  because and the award is "final" for jurisdictional purposes because Arbitrator Askin

2  believed he was done with the case.  *See Smart v. International Broth. of Elec. Workers,*

3  *Local 702*, 315 F.3d 721, 725 -726 (7th Cir. 2002)("if the arbitrator himself thinks he's

4  through with the case, then his award is final and appealable").  The wisdom of this approach

5  is clear here: because Arbitrator Askin personally relinquished jurisdiction of the dispute,[8]

6  the arbitration process would be left at a dead standstill if this Court had no jurisdiction to

7  confirm or vacate the award.

8       Finality under the FAA – both for purposes of judicial review and under § 10(a)(4) –

9  is slightly different.  A district court generally "does not have the power to review an

10  interlocutory ruling by an arbitration panel" under the FAA.  *Michaels v. Mariforum*

11  *Shipping, SA*, 624 F.2d 411, 414 (2nd Cir. 1980).[9]  But although the Ninth Circuit has not

12  addressed the issue, numerous courts have held that a court may review an award that

13  determines liability in a bifurcated arbitration proceeding, even if remedy issues remain.

14       In *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 233-34 (1st Cir. 2001), for

15  example, the First Circuit found that where the parties agree to bifurcate arbitration into

16  liability and remedy phases, an award on liability alone is reviewable.  Extrapolating from

17  cases which have held that an arbitration award is final and subject to review if it resolves a

18  severable claim, (*see, e.g., Publicis Communication v. True North Communications, Inc.*, 206

19  F.3d 725, 729 (7th Cir. 2000) and cases cited therein), the court reasoned that where the

20       [8]  "The parties authorized this Arbitrator to retain jurisdiction of the remedy, if any, arising

21  from this dispute.  This Arbitrator respectfully declines that delegation of authority."  Suppl.
Opinion and Award at 23 n.1.

22       [9]  Some courts view this requirement as stemming from § 10(a)(4) of the FAA, even though

23  that section concerns grounds for vacating arbitration awards. *See, e.g., Hart Surgical Inc. v.
Ultracision, Inc.*, 244 F.3d 231, 233 (1st Cir. 2001)(principle that decision must be "final, not

24  interlocutory" comes from application of § 10(a)(4));  Rhodes, Comment, "Judicial Review of
Partial Arbitral Awards Under Section 10(a)(4) of the Federal Arbitration Act," 70 *U. Chi. L. Rev.*

25  662, 670-71 (2003).  The Seventh Circuit, on the other hand, has held that § 10(a)(4) is *not* a
jurisdictional statute; it "assumes that the award is properly before the court, and establishes a

26  ground for vacating it." *Smart v. International Brotherhood of Electrical Works, Local 702*, 315
F.3d 721, 725 (7th Cir. 2002)(Posner, J.).  Perhaps because of this confusion, some courts have

27  elided the difference between the question of whether an award is sufficiently final to be reviewed
by the district court, and the question of whether an award must be vacated under § 10(a)(4) because

28  it is insufficiently "mutual, final, and definite."  *See Hart Surgical*, 244 F.3d at 233-34 (noting that
parties moved to vacate under § 10(a)(4), but deciding solely whether action was reviewable).

parties "submitted, in a discrete proceeding, all of the evidence pertaining to the issue of liability," and the arbitrators "conclusively decided every point required by and included in" the submission, the award was reviewable. 244 F.3d at 233-235. Similarly, in *Providence Journal Co. v. Providence Newspaper Guild,* 271 F.3d 16 (1st Cir. 2001), the First Circuit decided "whether a partial arbitration award on liability is reviewable in the absence of formal bifurcation." *Id.* at 19. Under circumstances nearly identical to those here, the Court reasoned the award was final:

> [T]he parties agreed to divide the arbitration hearing into two parts: the first phase required the arbitrator to determine whether the collective bargaining agreement had been violated; and the second phase required him to fashion a remedy. The arbitrator acknowledged this stipulation of the parties by noting, "If I find a violation of the contract, I should retain jurisdiction for purposes of facilitating compliance with a remedy." ... All evidence related to the issue of liability was then presented to the arbitrator, and shortly thereafter he issued his decision on liability. In doing so, the arbitrator, in turn, "conclusively decided every point required by and included in" the liability phase. *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir.1991); *McGregor Van De Moere, Inc. v. Paychex, Inc.*, 927 F.Supp. 616, 618 (W.D.N.Y.1996) (concluding that the parties' decision to bifurcate the issue of liability from damages reflects their agreement that the award on liability will be final). ...Clearly, then, both the parties and the arbitrator agreed to bifurcate the arbitral proceeding and understood the determination of liability to be a final award.

*Id.* at 19-20.

As the Second Circuit explained in *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191 (2d Cir.1991), the application of finality principles

> must be assessed in light of two other pertinent principles. First, the submission by the parties determines the scope of the arbitrators' authority. Thus, if the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so. Second, once arbitrators have finally decided the submitted issues, they are, in common-law parlance, "*functus officio*," meaning that their authority over those questions is ended. Thus, if the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue.

*Id.* at 195 (citations omitted). Given that the arbitrator cannot redetermine or revisit an award that determines liability, the Court may review and confirm such a liability award standing alone. *Id.*

Numerous courts have used the same reasoning when they evaluate whether an arbitrator "so imperfectly executed" his powers "that a mutual, final, and definite award upon

11

the subject matter submitted was not made" within the meaning of § 10(a)(4), such that the Court should vacate the award. For instance, in *Smart*, *supra*, an arbitrator found that Smart was liable for certain payments to a union, but did not specify the dollar amount he owed, stating only that "the parties are encouraged to meet as soon as possible to resolve the current delinquencies." 315 F.3d at 724. Smart moved to vacate the award under § 10(a)(4) of the FAA, claiming it was insufficiently final. The Seventh Circuit held that "the purpose of the section is merely to render unenforceable an arbitration award that is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it." *Id.* at 725. It was therefore not analogous to the final judgment rule of 28 U.S.C. § 1291. *Id.* at 726.

Similarly, in *Andrea Doreen, Ltd. v. Building Material Local Union 282,* 250 F.Supp.2d 107, 115 (E.D.N.Y. 2003), the court found that an award which determined liability and directed parties to return within 60 days for a remedy phase was "not incomplete" under § 10(a). There, the parties had agreed to bifurcate liability and remedy issues, and an arbitrators found liability. *Id.* at 110. The district court found it could deem the liability award "final" and confirm it; the parties had agreed to bifurcate liability and damages, and once the arbitrators found liability, they could not reopen or redetermine the issue. *Id* at 112. It was immaterial that the parties "did not explicitly agree that each part of the bifurcated award would be final," because nothing in the record suggested that the parties believed the liability finding would be final. *Id.* It could be confirmed "like any other interim award" that finally disposes of a separate independent claim." *Id. See also Huntington Hospital v. Huntington Hospital Nurses' Association*, 302 F.Supp.2d 34, 38-42 (E.D.N.Y. 2004)(award finding liability against Hospital and directing it to "take the necessary action" to recover illegal overpayments was sufficiently final under § 10(a)(4); arbitrator disposed of issues presented, and award was not rendered indefinite by the fact that further litigation might be necessary to effectuate it).

United States District Court

For the Northern District of California

1    Under this standard, Arbitrator Askin's Supplemental Opinion and Award finding that

2    NUMMI's leave policy violates the CBA is final and definite within the meaning of

3    § 10(a)(4).  There were two issues before the Arbitrator: "Did the Employer violate the

4    Collective Bargaining Agreement" and "If so, what is the appropriate remedy."  Suppl.

5    Opinion and Award at 2.  At NUMMI's insistence, the Arbitrator bifurcated liability and

6    remedy proceedings, refusing to decide even the purely "conceptual" remedy questions that

7    the Union urged him to address.  Suppl. Opinion and Award at 27 n.6.  The parties submitted

8    all their evidence relating to liability to the Arbitrator.   The Arbitrator's Award concluded

9    that

> The language in Article XXIII, Section 9.3 means that employees are entitled to the
> full amount of time for time sick leave set forth therein, with seniority measured from
> the date of hire to the last day worked, before such leave can be terminated and before
> an employee's seniority can be broken.  Accordingly, the Employer violated the
> Collective Bargaining Agreement by implementing a new policy regarding long-term
> leaves of absence that terminated "time for time" sick leave entitlement before the
> "maximum period set forth" in Section 9.3, and by terminating those employees
> whose entitlement to time for time leave had not been exhausted.

Supplemental Opinion and Award at 23.  This Opinion and Award on liability, together with

the 2006 Opinion and Award, "conclusively decided every point required by and included

in" the liability phase. *See Providence Journal Co.*, 271 F.3d at 19-20.  There is no evidence

that either party believed that either the parties or the Arbitrator would be able to reopen or

revisit the liability phase once Arbitrator Askin issued his award.

None of NUMMI's arguments to the contrary is availing.  Many of the cases upon

which it relies concern only whether an award is "final and binding" under § 301 of the

LMRA, not whether an award should be vacated under § 10(a)(4).  *See, e.g., Public Service

Elec. and Gas Co. v. System Council U-2, Intern. Broth. of Electrical Workers, AFL-CIO,*

703 F.2d 68, 70 (3rd Cir. 1983) (arbitration decision determining only liability not final

award within the meaning of 29 U.S.C. § 185, so district court does not have jurisdiction to

vacate award under § 301); *Millman's Local 550,* 838 F.2d at 1376 (same); *Orion Pictures

Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722, 724-25 (9th Cir. 1991); *Local

13

**United States District Court**
For the Northern District of California

1  *Union 15 v. Exelon Corp.,* 2004 WL 769431, *4 (N.D.Ill. April 8, 2004)(award which does

2  not determine remedy is not "final and binding" under 29 U.S.C. § 1985).

3       *Conn-Tech*, cited by NUMMI, does state that an award is final within the meaning of

4  § 10(a)(4) if it resolves "all issues submitted to arbitration," 102 F.3d at 686, but finds only

5  that a precise monetary award is sufficiently final and definite;  it does not discuss  whether

6  an award should be vacated if it resolves only liability phase issues.

7       Other cases on which NUMMI relies in fact support the Union's position.  NUMMI

8  cites *Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.,* 990 F.Supp. 304 (S.D.N.Y. 1998) for

9  the proposition that an award cannot be confirmed if it does not specify the amount of

10 damages, Pet. at 21, but *Clarendon* actually weighs in favor of the Union.  There, an

11 arbitration panel issued an opinion that found liability and proscribed the accounting

12 treatment of certain payments that would be used to calculate damages; in a subsequent

13 award, it set out the dollar amount of payments on certain issues, but on the last issue ruled

14 only that one party was entitled to "significant compensation."  *Id.* at 308.  Noting that it was

15 "well-settled that an arbitration award disposing of a separate and independent claim may be

16 deemed final and subject to confirmation although it does not dispose of all the claims that

17 were submitted to arbitration," *id.* at 309, the Court remanded only the final issue for a ruling

18 on the amount of damages; it refused to vacate the liability finding and another damage

19 award.  *Id.* at 309-11.

20      *Island Territory of Curacao v. Solitron Devices, Inc.,* 356 F.Supp. 1 (S.D.N.Y. 1973)

21 is no more help to NUMMI.  There, the defendant company entered into a contract with the

22 government of the Netherland Antilles to open a business there and employ 3,000 people.

23 When the minimum wage suddenly rose, the company pulled out of the deal.  The Antilles

24 took the dispute to arbitration, pursuant to the contract.  The arbitration panel found for the

25 Antilles, and calculated damages for the first three years of the 20-year period of the deal.

26 *Id.* at 9.  It did not award damages for the period after that, finding that they would be too

27 uncertain; instead, the panel ruled that at the end of the three year period, the parties should

28

again submit to arbitration, pursuant to the agreement, for a further determination of the damages from that date forward.  *Id.*

The Court squarely rejected the defendant's argument that this award – which, like the award here, ordered *another arbitration before a different arbitrator* to determine damages – was insufficiently mutual, definite, and final under 9 U.S.C. § 10.  *Id.* at 11-12.  The portion of the award already issued was clear, and the fact "[t]hat at some time in the future another arbitration and another award are possibilities does not mean that the present award at the present time is not 'final' and 'definite.'" *Id.* at 12.[10]  *Curacao* compels a finding that the award here, which similarly determines liability and directs the parties to another arbitrator if necessary, is mutual, definite and final under § 10(a)(4).

NUMMI also cites *Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003), which found an award insufficiently final and definite. But there, the arbitration panel decided some but not all of the remedy issues: it considered an award of prejudgment interest to go with its award of damages, but did not rule on it, instead simply holding the issue open for later judicial determination.  The Court vacated the "award" on *prejudgment interest* because it was indefinite, not other components of the arbitration award.  *Gas Aggregation* would be analogous only if NUMMI were arguing that the remedy portion of the award was incomplete and should be vacated.

Next, NUMMI asserts that the arbitration was not, in fact, bifurcated along classic liability/damages lines, Reply at 10-11, but that the remaining issues "are more like liability questions than damages" questions.  Reply at 10.  But it does not describe how or why the issues are more like liability – except that they involve conceptual questions rather than mere calculation of damages.  But, as cases distinguishing between mere "mathematical computation" of damages and resolution of remedy show, *see, e.g., Millmen's*, 828 F.2d at 1377, a remedy phase can involve resolution of legal issues as well as mechanical award calculation.

---

[10]  Although NUMMI argued at the hearing that there is "no case where the entire panel drops out," *Curacao* is precisely such a case.

1    NUMMI also argues that the parties will have to "reeducate a brand new arbitrator

2    about the whole, complicated dispute and the many factual and legal nuances" of the case if

3    they are forced to proceed in front of a new arbitrator.  Pet. at 13.  But the remedy NUMMI

4    seeks is even more burdensome and inefficient:  if the Court were to vacate the award and

5    grant NUMMI the relief it seeks, both parties would have to start from scratch;  the new

6    arbitrator would have revisit *all* the liability issues Arbitrator Askin resolved over the course

7    of two evidentiary hearings and nearly fifty pages of opinion and award.

8    Finally, NUMMI argues that the Court would create a "vast exception" to the final

9    judgment rule if it refuses to vacate the liability award.  But this case presents a unique set of

10   circumstances and will in no way erode the general rule.  As set out above, the Court would

11   ordinarily refuse to review a liability award alone under § 301 of the LMRA because it is not

12   "final and binding."  The FAA provides no independent basis for jurisdiction.  As NUMMI

13   accurately argues, "what makes this case 'appealable' is the fact that the Arbitrator quit," and

14   if he had not, "this case would not be ripe for the instant Petition (or the UAW's collateral

15   action).  Reply at 7.  But he did "quit," to use NUMMI's parlance, and that fact makes this

16   one of the rare occasions when the Court can properly exercise jurisdiction over a liability

17   award alone.  The award is properly before the Court, NUMMI has shown no ground to

18   vacate it.

19

20   **III.    The Arbitrator Did Not Exceed His Powers Under§ 10(a)(4) of the FAA or § 301**
           **of the LMRA By Directing The Parties To Proceed With A New Arbitrator**

21
22   It is well-settled that an arbitrator's authority is derived from, and limited by, the

23   contracts and other rules that give them the power to act.  *Lindand v. United States Wrestling*

     *Ass'n, Inc.*, 227 F.3d 1000, 1004 (7th Cir. 2000).  NUMMI contends the Award exceeded

24   the Arbitrator's authority because he was not empowered to  "requir[e] the parties to arbitrate

25   a large part of their dispute with someone else," Pet. at 15, or to "bifurcate the issues

26

27

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  between himself and someone else."[11]  Accordingly, NUMMI argues, the Court must vacate

2  the Award under § 10(a)(4) of the FAA and § 301 of the LRMA.

3          As a preliminary matter, it is not clear to the Court that Arbitrator Askin's instruction

4  that the parties proceed before a different arbitrator constitutes a "partial remedy of more

5  arbitration with someone else," rather than a simple artifact of his decision to resign and

6  decline jurisdiction.  The passage "remanding" the remedy issue to the parties and stating

7  that they "retain the right to seek arbitral resolution of any outstanding remedial issues ...

8  before a different arbitrator" is indeed set out as the second part of the "Supplemental

9  Award."  Suppl. Opinion and Award at 23.  But NUMMI admitted at the hearing that it has

10  no authority suggesting that an arbitrator's decision to resign and direct the parties to another

11  arbitrator has ever been treated as a quasi-injunctive award, much less one outside the

12  arbitrator's authority.   Although *Dow Corning Corp. v. Safety National Cas. Corp.,* 335 F.3d

13  742 (8th Cir. 2003), discussed below, inquired whether an arbitration panel exceeded its

14  authority by substituting a panel member, it did not treat the substitution as part of the

15  remedy.

16          Assuming for the sake of argument that the instruction to proceed in front of a

17  different arbitrator was part of the remedy or award, it was not in excess of the authority

18  granted the Arbitrator under the CBA.  Under the FAA and LMRA, the arbitrator's view of

19  the scope of his or her powers and issues submitted for arbitration receives the same judicial

20  deference as the arbitrator's decision on the merits.  *Schoenduve Corp. v. Lucent*

21  *Technologies, Inc.*, 442 F.3d 727, 733 (9th Cir. 2006)(FAA); *Sheet Metal Workers' Int'l Ass'n*

22  *Local Union No. 359 v. Madison Indus.*, 84 F.3d 1186, 1190 (9th Cir. 1996) (interpretation of

23  CBA under LMRA). "An arbitration award must be confirmed as long as the arbitrator is

24  even arguably ...acting within the scope of his authority."  *United Food & Commercial*

25  *Workers Intern. Union, Local 588 v. Foster Poultry Farms,* 74 F.3d 169, 173 (9th Cir.

26  1995)(internal quotations and citation omitted).

27          [11]  NUMMI does not argue that Arbitrator Askin decided issues not submitted to him; on the
contrary, the parties agreed to allow him to frame the issues he would decide, 6/6/07 RT at 296, and

28  he carefully limited his decision to issues both parties wanted to submit to him.  Id. at 301, 306.

United States District Court

For the Northern District of California

1    The portion of the CBA in this case governing the authority of the Arbitrator provides:

2    The Arbitrator shall be empowered to hear, investigate and decide any differences
3    between the parties concerning the interpretation or application of the provision of this
     Agreement.  The Arbitrator shall have no power or authority to rule on or to decide
4    any matter which is not covered by express provisions of this Agreement or which is
     left to the responsibility or discretion of the Company.  The Arbitrator shall have no
5    power to: (1) add to, subtract from, or otherwise modify any of the provisions of the
     Collective Bargaining Agreement; ...[modify wages, rule on standardized work,
6    benefit plans, health and safety problems] ... (6) rule on those issues or disputes in
     which the parties waived their rights under Article XXX' or (7) rule on any matter
7    specifically excluded from the Problem Resolution Procedure by any part of this
     Agreement.

8    CBA, Art. X, § 7.1.   The CBA also provides that the CBA "constitutes the entire Agreement

9    between the parties, except as modified by written side letters...."   CBA, Art. XXX, § 1.

10   NUMMI argues that the CBA specifically requires a *single* Arbitrator to resolve

11   disputes because it requires the parties to choose "*an* Arbitrator," CBA Art. X § 6.2, and

12   refers to "*the* Arbitrator." *Id.* § 7.1.  Because the Arbitrator has no power to modify these

13   provisions of the CBA, *id.*, NUMMI contends he has no power to "divide disputes" between

14   arbitrators.  Opp. to MSJ at 15-16.   NUMMI also argues that to the extent the CBA is

15   ambiguous, the Court should look to the Parties' interpretation and understanding of the

16   CBA, including their negotiations about the arbitration provisions, to see whether the CBA

17   authorized "multiple arbitrators" to hear a dispute. *See, e.g.,*  Declaration of Robert

18   McCullough in Support of NUMMI's Petition to Vacate Arbitration Award ¶ 5 ("The parties

19   have always interpreted Article X, Sections 6 and 7.1 of their current collective bargaining

20   agreement (and the same language in prior agreements) to require one arbitrator, not multiple

21   arbitrators, to hear an entire dispute.")

22   The CBA's use of the singular ("*an* Arbitrator"), standing alone, is insufficient to

23   show an explicit agreement or intention to require the parties to use one, and only one,

24   arbitrator in every conceivable circumstance.  The plain interpretation in this context is that

25   the parties intended the arbitration process to involve one rather than a panel of arbitrators.

26   Because it is unambiguous, the Court declines NUMMI's invitation to delve into extraneous

27   evidence of the parties' prior understanding of the CBA language.

28

United States District Court

For the Northern District of California

On the contrary, Arbitrator Askin's instruction that the parties proceed with a different arbitrator was well within his authority. Even if it is construed as a partial "remedy," it flows directly and naturally from the underlying obligation to arbitrate disputes set out in Article X of the CBA. Moreover, had he simply resigned, the result would have been precisely the same. Numerous cases hold that in parallel circumstances, a substitute can be appointed when an arbitrator dies, and the death of an arbitrator does not provide a basis for vacating prior rulings. In *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, *supra,* for example, the Second Circuit held that when a panel member died after the panel issued a liability ruling, the parties were not required to rearbitrate the entire dispute from the beginning; the Court had the power to appoint a substitute arbitrator even in pending arbitration. 931 F.2d 194-96. And in the more recent *United Government Sec. Officers of America, Local 38 v. Wackenhut Corp.,* 2005 WL 2104849, 5 (D.Or. August 29, 2005), the district court had no trouble remanding a case to a different arbitrator after the original arbitrator died, with instructions that the new arbitrator should not revisit the arbitrability decision of the first. These and other cases cited by the Union clearly show that when an arbitrator dies, a new arbitrator may be appointed and cannot revisit final decisions like the liability finding here. NUMMI has not explained why the rule should be any different if the arbitrator resigns rather than dies; both are circumstances beyond the parties' control.

Cases which discuss whether parties must arbitrate under an agreement when the chosen arbitration forum is unavailable are also instructive. Where parties agree to arbitrate a dispute, the agreement does not become void if the chosen arbitrator is unavailable or refuses to arbitrate the dispute. *See, e.g., Reddam v. KPMG LLP,* 457 F.3d 1054, 1060 (9th Cir. 2006)(arbitration clause not unenforceable if the chosen arbitrator cannot or will not act, unless the choice is integral of the agreement to arbitrate); *McGuire, Cornwell & Blakey v. Grider,* 771 F.Supp. 319, 320 (D.Colo. 1991)(agreement to arbitrate is binding even though chosen arbitrator unavailable, unless the choice of the arbitrator "was central to the parties' agreement to arbitrate"). These cases treat substitution of a different arbitrator as contrary to

1  the arbitration agreement only when the parties' choice of the arbitrator was critical.[12]   There

2  is no evidence here that either the CBA's reference to a single Arbitrator in general, or the

3  Parties' choice of Arbitrator Askin in particular, was critical to the underlying agreement to

4  arbitrate.  The CBA could have explicitly specified that the parties must proceed before a

5  single arbitrator, but did not.  Moreover, NUMMI was perfectly willing to substitute

6  arbitrators when doing so would serve its purposes: NUMMI suggested switching to a

7  different arbitrator after the unfavorable 2006 Opinion and Award.  *UAW Local 2244 v.*

8  *NUMMI,* Case No. 08-1242,  Declaration of Nick Geannacopulos In Opposition to Motion

9  for Summary Judgment, filed April 28, 2008) ¶ 3.  This request fatally undermines any

10  argument that the choice of a single arbitrator was central to the parties' grant of arbitration

11  authority in the CBA.

12       Finally, in a similar (albeit not identical) situation, the Eighth Circuit found that an

13  arbitration panel did not exceed its authority by directing one party to choose a replacement

14  arbitrator for a panel member who resigned. *Dow Corning Corp. v. Safety National Cas.*

15  *Corp.,* 335 F.3d 742 (8th Cir. 2003).  The substitution order was not in excess of authority

16  because the arbitrator was not substituted in the middle of proceedings.  *Id.* at 749, citing *Cia*

17  *De Navegacion Omsil, S. A. v. Hugo Neu Corp.*, 359 F.Supp. 898, 899 (S.D.N.Y.

18  1973)(substitution improper where first arbitrator's influence on and participation in the

19  proceedings might not be carried through to the final decision).  Moreover, the substitute

20  arbitrator was chosen by the method set out in the agreement to arbitrate.  *Id.* at 749.

21  Finally, the court noted that starting over would deprive one party of its "win" at an earlier

22  stage. *Dow Corning*, 335 F.3d at 749.

23       Applied to the case at bar, *Dow Corning* compels the conclusion that Arbitrator

24  Askin's mandate that the parties proceed with a different arbitrator was not in excess of

25  authority.  None of problems with substituting one of three arbitrators midstream  discussed

26  in *CIA De Navegacion Omsil* arise, because only one arbitrator is involved in a discrete and

27       [12]  NUMMI argues that these cases about "forum selection" are inapposite because NUMMI
has not refused to arbitrate.  But they are instructive about when the availability of the chosen
28  arbitrator is considered essential to the arbitration process and when it is not.

severable portion of the dispute.  Like the panel in *Dow Corning,* Arbitrator Askin directed the parties to choose a subsequent arbitrator, if necessary, "by mutual agreement" or "in accordance with the parties' customary method of selecting an arbitrator."  Suppl. Opinion and Award at 23.  And, as in *Dow Corning*, forcing the parties to start anew because of a circumstance beyond the parties' control would deprive the Union of its "win" at the liability stage.

Arbitrator Askin's award, declining jurisdiction and directing the parties to use a substitute arbitrator, was generally consistent with the CBA's requirement that the parties arbitrate disputes.  It also directed the same outcome that would have ensued had he simply declined further jurisdiction, or had he become unavailable for some other reason (such as death).  NUMMI has not shown he acted in excess of his authority.

Finally, even if Arbitrator Askin had exceeded his authority by ordering the parties to proceed before another arbitrator, the Court would not vacate his liability finding, which all concede was within his authority.  *See Comedy Club, Inc. v. Improv West Associates,* 514 F.3d 833, 845 (9th Cir. 2007)("If an arbitrator exceeded the scope of his authority in issuing an award, and that award is divisible, we may vacate part of the award and leave the remainder in force.").  The end result, therefore, would be the same: the Court would confirm the liability findings in the 2006 and 2007 Opinions and Awards, and the parties would arbitrate the remainder of the dispute, as required by the CBA, before a different arbitrator.

**CONCLUSION**

By denying the Petition to Vacate the arbitration awards, this Court in no way condones Arbitrator Askin's decision to decline jurisdiction in the middle of an arbitration. That choice has consumed the resources of both the parties and this Court.  Parties are entitled to expect that, under ordinary circumstances, an arbitrator who agrees to hear a dispute will resolve it in its entirety.  Moreover, as the Supreme Court has acknowledged, arbitrators are not necessarily interchangeable, and the parties' choice of arbitrator is

United States District Court
For the Northern District of California

1   important.  *See United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574,

2   582 (1960).

3          Nonetheless, NUMMI has not shown any ground for vacating the 2006 Opinion and

4   Award and the 2007 Supplemental Opinion and Award.  Taken together, the awards are

5   "mutual, final, and definite" within the meaning of § 10(a)(4) of the Federal Arbitration Act.

6   Arbitrator Askin's direction that the parties proceed before a different arbitrator after he

7   declined continuing jurisdiction was not in excess of his authority, under either § 10(a)(4) or

8   § 301 of the LMRA.

9          The Court "must" confirm an arbitration award unless it is vacated, modified, or

10  corrected under the FAA.  9 U.S.C. § 9;  *Hall Street Associates, L.L.C. v. Mattel, Inc.,* __

11  U.S. __, 128 S.Ct. 1396 (2008).  The Union has also moved, in the related case *UAW Local*

12  *2244 v. NUMMI,* No. C-08-1242, to confirm the award under § 301 of the LMRA, and the

13  Court must enforce a labor arbitration award under that statute unless certain narrow grounds

14  for vacatur apply.  *See* Section I, *supra;  Line Drivers, Pickup and Delivery, Local 81 v.*

15  *Roadway Express Inc*., 152 F.3d 1098, 1099 (9th Cir.1998)("bound to enforce the arbitrator's

16  judgment"); *Pacific Maritime Ass'n. v. International Longshoremen's and Warehousemen's*

17  *Union, Local 10,* 1997 WL 229811, 2 (N.D.Cal. May 1, 1997).  No ground for vacating the

18  award appears under either statute.  Accordingly, the Court will confirm the awards.

19         Good cause appearing therefore, the Court hereby DENIES the Petition and

20  CONFIRMS Arbitrator Askin's 2006 Opinion and Award and 2007 Supplemental Opinion

21  and Award.

22

23  **IT IS SO ORDERED.**

24  Dated:   6/19/08                                    _____

25                                                      THELTON E. HENDERSON, JUDGE
                                                        UNITED STATES DISTRICT COURT

26

27

28

22