JONATHAN WEISSGLASS (SBN 185008)
LINDA LYE (SBN 215584)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California  94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: jweissglass@altshulerberzon.com
E-Mail: llye@altshulerberzon.com

Attorneys for Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| NEW UNITED MOTOR MANUFACTURING, INC.,<br><br>          Movant/Petitioner,<br><br>  v.<br><br>UNITED AUTO WORKERS LOCAL 2244,<br><br>          Respondent. | **Case No. CV-08-0976 TEH**<br><br>**RESPONDENT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date:   September 8, 2008<br>Time:  10:00 a.m.<br>Place:  Courtroom 12, 19th Floor |

1

**NOTICE OF MOTION AND MOTION**

2

3        PLEASE TAKE NOTICE that on September 8, 2008, at 10:00 a.m., or as soon thereafter as

4    it may be heard, in Courtroom 12 of this Court, located at 450 Golden Gate Avenue, 19th Floor, San

5    Francisco, CA 94102, Respondent United Auto Workers, Local 2244, ("the Union") will, and

6    hereby does, move this Court for attorneys' fees and litigation expenses pursuant to Section 301 of

7    the Labor-Management Relations Act, 29 U.S.C. §185 ("Section 301") and the Federal Arbitration

8    Act ("FAA"), 9 U.S.C. §1 *et seq*.  This motion is made on the grounds that Respondent is entitled to

9    fees under Section 301 and the FAA because Petitioner New United Motor Manufacturing, Inc.

10    ("NUMMI") refused to recognize the validity of two arbitration awards in bad faith and without

11    justification, and that $78,435.29 is a reasonable amount of fees and expenses for the work

12    performed as a result of NUMMI's bad faith conduct (plus any additional fees and expenses

13    incurred after July 5, 2008 in this matter).

14        This motion is based on this Notice of Motion and Motion with accompanying

15    Memorandum of Points and Authorities, the supporting Declarations of Linda Lye and Michael

16    Rubin, the Court's complete files and records in this matter, and the related action, Case No.

17    02-1242-TEH, and such other matters as may be presented to the Court at or before the hearing.

18

19    Dated:        July 8, 2008                    Respectfully submitted,

20                                                  JONATHAN WEISSGLASS
                                                    LINDA LYE
21                                                  ALTSHULER BERZON LLP

22

23                                                      /s/Linda Lye
                                                        Linda Lye
24
                                                    Attorneys for Respondent
25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    The Union Should Be Awarded Its Attorneys' Fees And Expenses To
              Deter NUMMI From Engaging In Future Dilatory, Frivolous, And Bad
              Faith Conduct And To Compensate The Union For Having To Vindicate
              Its Clearly Established Rights  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    The Attorneys' Fees and Litigation Expenses Sought By the Union
              Are Reasonable  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## CASES

*Alyeska Pipeline Service Co. v. Wilderness Society,*
  421 U.S. 240 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Beasley v. Wells Fargo Bank,*
  235 Cal.App.3d 1407 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brown v. Sullivan,*
  916 F.2d 492 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cairns v. Franklin Mint Co.,*
  292 F.3d 1139 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.,*
  990 F.Supp. 304 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Comedy Club, Inc. v. Improv West Assocs.,*
  514 F.3d 833 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Douglas v. U.S. Dist. Court for Cent. Dist. of California,*
  495 F.3d 1062 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dow Corning Corp. v. Safety Nat'l Casualty Corp.,*
  335 F.3d 742 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fortune, Alsweet and Eldridge, Inc. v. Daniel,*
  724 F.2d 1355 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Huber, Hunt & Nichols, Inc v. United Ass'n of Journeymen and Apprentices of Plumbing
  and Pipefitting Indus., Local 38,* 282 F.2d 746 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 13

*Huecker v. Milburn,*
  538 F.2d 1241 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Int'l Ass'n of Machinists & Aerospace Workers Dist. 776 v. Texas Steel Co.,*
  639 F.2d 279 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Int'l Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.,*
  707 F.2d 425 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Island Territory of Curacao v. Solitron Devices, Inc.,*
  356 F.Supp.1 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Jordan v. Multnomah County,*
  815 F.2d 1258 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McClatchy Newspapers v. Central Valley Typographical Union,*
  686 F.2d 731 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Road Sprinkler Fitters Local Union No. 669, U.A. v. Cosco Fire Protection, Inc.,*
    363 F.Supp.2d 1220 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Rostad and Rostad Corp. v. Investment Management & Research, Inc.,*
    923 F.2d 694 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 15

*SSA Terminals v. Machinists Automotive Trades Dist. Lodge No. 190,*
    244 F.Supp.2d 1031 (N.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schoenduve Corp. v. Lucent Technologies, Inc.,*
    442 F.3d 727 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Industries, Inc.,*
    84 F.3d 1186 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Trustees of the Construction Industry and Laborers Health and Welfare Trust v.*
    *Redland Ins. Co.,* 460 F.3d 1253 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

## STATUTES AND REGULATIONS

29 U.S.C. §185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

1                     **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

3           Petitioner New United Motor Manufacturing, Inc. ("NUMMI") has made a mockery of its

4    promise, contained in its collective bargaining agreement with Respondent United Auto Workers,

5    Local 2244 ("UAW" or "Union"), to respect all arbitration decisions as "final and binding."  Raising

6    meritless, inconsistent, and contradictory arguments, NUMMI attempted to vacate two arbitration

7    awards that concluded that NUMMI violated its collective bargaining agreement with Respondent

8    United Auto Workers, Local 2244 ("UAW" or "Union") by implementing a new sick leave policy in

9    fall 2005 and terminating approximately 100 disabled employees pursuant to that policy.  NUMMI's

10   petition has forced the Union to waste precious resources defending the arbitration awards and the

11   contractual grievance process, and has delayed the already overdue remedy owed to the scores of

12   disabled employees that NUMMI improperly terminated two and a half years ago.  NUMMI's

13   egregious refusal to respect its promises both to provide sick leave and to respect arbitration awards

14   rendered through the grievance process undermines the federal labor policy of industrial stability.

15   *See generally United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574

16   (1960); *see also Int'l Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*,

17   707 F.2d 425, 428 (9th Cir. 1983) ("labor arbitration advances the goal of industrial stabilization").

18   An award of attorneys' fees in this case is necessary "to deter [future] frivolous dilatory tactics" and

19   to compensate the Union "for the added expense of having to vindicate clearly established rights in

20   court."  *Int'l Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d

21   425, 428 (9th Cir. 1983) (hereinafter "*IUPIW*") (internal quotation marks, citations omitted).  "[T]he

22   deterrence aspect of an award of attorneys' fees is particularly served where," as here, NUMMI

23   "without justification, refuse[d] to abide by [the] arbitrator's award[s]."  *Id.*

24   //

25   //

26   //

27   //

28

NOTICE OF MOTION & MOTION FOR ATTYS' FEES & EXPENSES; MEM. OF P&A ISO MOTION,
Case No. CV-08-0976 TEH                                                                          1

1    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

2        Having already ruled in the Union's favor on NUMMI's petition to vacate, *see* Order

3    Denying Petn. to Vacate Arb. Award (Doc. 31) ("Order"), the Court is familiar with this case.  We

4    provide the necessary context for this motion for attorneys' fees.

5        The UAW and NUMMI are parties to a CBA.  The agreement has long contained a provision

6    on sick leave, known as "the 'time for time' provision, based on the notion that the amount of sick

7    leave, for most employees, is equivalent to the employee's work 'time' (seniority)."  NUMMI's

8    Appx. of Evid. (Doc. #3) ("Appx."), Exh. 1 at 4.  From at least 1990 until fall 2005, NUMMI

9    allowed its employees to remain on sick leave for their full "time for time" period and did not

10   terminate the sick leave once an employee's medical condition became permanent.  Appx., Exh. 1 at

11   10, Exh. 2 at 4-5; Order at 2.

12       In fall 2005, however, NUMMI suddenly implemented a new sick leave policy, pursuant to

13   which it terminated the sick leave of employees whose medical condition had become permanent

14   and even if they had not used up their "time for time" leave.  Pursuant to this policy, NUMMI

15   terminated approximately 100 employees on sick leave.  The Company claimed that its new policy

16   was justified by an old 1990 arbitration decision issued by Arbitrator Paul Staudohar.  Appx., Exh. 1

17   at 10-11, Exh. 2 at 6-7; Order at 2.

18       The Union filed a grievance under the dispute resolution mechanism set forth in the parties'

19   CBA.  *Id*.  Under that multi-step procedure, unresolved disputes are submitted to "final and binding

20   arbitration."  CBA, Art. X, §8 at 23 (attached as Appx., Exh. 3).  The parties selected Arbitrator

21   Charles Askin to hear the Union's grievance and stipulated that the dispute was properly submitted

22   to him "for a final binding arbitration."  Reporter's Transcript of August 14, 2006 Arbitration

23   Hearing ("8/14/06 RT") at 14 (attached to Decl. of Linda Lye (Doc. 18), Exh. A.)

24       ***First merits award.***  The first of what became two hearings was held on August 14 and 15,

25   2006.  The Union sought to address all of the issues necessary to resolve the merits of the Union's

26   grievance at the August 2006 arbitration.  The Union raised two issues going to the merits of its

27   grievance: (1) that the *Staudohar* arbitration did not authorize the Company's new sick leave policy

28   and (2) that the Company's new sick leave policy violated the CBA, in particular the "time for time"

1   provision of the contract.  8/14/06 RT at 21, 32.  The Union also asked the Arbitrator to address

2   "conceptual" remedy issues, in particular, "how to calculate the time-for-time clock," because the

3   parties would have to address the "critical question" of "how long the time-for-time clocks are" to

4   calculate make-whole relief for employees terminated pursuant to the new sick leave policy.  *Id.* at

5   37, 38, 43; *see also* Union's September 28, 2006 Arbitration Brief ("Union's 9/28/06 Brf.") at 34-35

6   (Doc. 18, Exh. D); Order at 3.  The Union acknowledged that most remedy issues should be

7   reserved for a later phase, but sought a ruling on the methodology for calculating time-for-time

8   because that involved an "overarching" "legal issue."  Reporter's Transcript of August 15, 2006

9   Arbitration Hearing ("8/15/06 RT") at 272; *see also* Union's 9/28/06 Brf. at 34-35.

10      The Company on the other hand insisted that the arbitrator decide only one issue, in

11   particular, the question of whether its new sick leave policy was justified by the 1990 *Staudohar*

12   decision.  The Company insisted that the other merits question was not before the arbitrator and that

13   if the Union prevailed on the *Staudohar* issue, that "the parties would have to arbitrate the [contract]

14   issue de novo."  NUMMI's September 28, 2006 Arbitration Brief ("NUMMI's 9/28/06 Brf.") at 17,

15   n.3, 30, 32 n.7, 34 (Doc. 18, Exh. F).  The Company also insisted on deferring remedy issues to a

16   later phase.  8/14/06 Tr. at 36-37; Order at 3.

17      Arbitrator Askin issued an award on November 24, 2006.  Opinion and Award (attached as

18   Appx., Exh. 1).  Because both parties had different views of the "scope of the stipulated issue"

19   before him, he "limited" his opinion "to what both parties understood the issue encompassed," *i.e.*,

20   the *Staudohar* issue.  *Id.* at 16-17; Order at 4.  On that question, he ruled for the Union, holding that

21   the Company's new policy was not "consistent with" the actual rulings in *Staudohar*.  Appx., Exh. 1

22   at 20.  He then "direct[ed] a *de novo* hearing on the merits of the Union's grievance," and retained

23   jurisdiction, but allowed the parties to agree on a different arbitrator or to request that he hear the

24   merits of the grievance.  *Id.* at 21; Order at 4.

25      Arbitrator Askin's "award clearly contemplated that a second arbitrator could be involved"

26   in hearing the next phase of the arbitration proceeding.  Order at 4 n.4.  Indeed, after Arbitrator

27   Askin ruled against NUMMI on the *Staudohar* issue, NUMMI's counsel "request[ed] that [the

28   parties] use a different arbitrator for the remainder of the grievance arbitration."  Declaration of

1    Nick Geannacopulos, *filed in* CV 08-1242-TEH (Doc. 24), at ¶3.  The Union declined, and the

2    parties proceeded with Arbitrator Askin, who had indicated he was still available to hear further

3    proceedings.  *Id.*; Opinion and Award at 21 ¶3.

4         ***Second merits award.***  The parties held a second hearing before Arbitrator Askin the

5    following year, in June 2007.  The Union sought to address both the unresolved contract issue it had

6    attempted to resolve in the prior phase of the arbitration, and the conceptual remedy question of the

7    proper method for calculating time for time leave.  Reporter's Transcript of June 6, 2007 Arbitration

8    Hearing ("6/6/07 RT") at 289-90, 292 (Doc. 18, Exh. C).  The Company refused to include the

9    methodology question in the issues to be submitted to the arbitrator, based on its view that "that

10   seems more like a remedy issue" and that remedy should instead be resolved in "another hearing."

11   *Id.* at 294.

12        The parties agreed to allow the Arbitrator to frame the issue in the proceeding.  *Id.* at 296.

13   The Arbitrator provided a lengthy description of his arbitration "philosophy," and set forth his view

14   that he only had authority to decide the issues on which there was a mutual delegation of authority.

15   Because NUMMI "ha[d] not elected to give me the authority" to decide both the contract and the

16   remedy issue, he stated that he would only decide the former.  *Id.* at 301; *see also id.* at 298-307;

17   Order at 5.  As a result, the parties' post-hearing briefs focused only on the contract issue, and the

18   Union expressly noted that it had not addressed remedy "at this stage of the proceeding based on the

19   Arbitrator's framing of the issue at the outset."  Union's October 19, 2007 Arbitration Brief at 27

20   n.1 (Doc 18, Exh. H); Supplemental Opinion and Award at 8-12 (Appx., Exh. 2); Order at 5.

21        As this Court found, Arbitrator Askin issued a "lengthy and thoughtful opinion[, which]

22   contained extensive discussion of applicable law about past practices."  Order at 6.  Construing the

23   contract language, he concluded that NUMMI's new sick leave policy and its termination of

24   employees who had not exhausted their full "time for time" leave violated the parties' CBA.

25   Supplemental Opinion and Award at 23.

26        Although the parties had authorized the arbitrator to retain jurisdiction over remedy, he

27   "respectfully decline[d] that delegation of authority."  *Id.* at 23 n.7.  He encouraged the parties to

28   negotiate a resolution of their dispute but made clear that both parties "retain[ed] the right to seek

arbitral resolution of any outstanding remedial issues arising from the subject grievance before a different arbitrator." *Id.* at 23 ¶2.

*Post-merits arbitration events.* Arbitrator Askin issued his second award on November 20, 2007. Appx., Exh. 2 at 23. Thereafter the Union promptly and repeatedly contacted the Company, set forth its position regarding implementation of the remedy, and requested a meeting to discuss these issues. Declaration of Earlie Mays, *filed in* CV 08-1242-TEH (Doc. 16), at ¶7 & Exh. D. The Union stated that "we should be able to resolve the remedy in this matter promptly without the need for resort to arbitration. If, however, we are not able to arrive at a suitable resolution on remedy by January 15, 2007, the Union will seek arbitral resolution of any outstanding remedial issues, to ensure that our members' right to obtain relief is fully protected." *Id.*, Exh. D; *see also id.* at ¶8 & Exh. E.

The parties did not reach resolution on the remedy issues by January 15, 2008. *Id.* at ¶9. 3. Nor did the Company take any action to reinstate the employees that the arbitrator found it to have improperly terminated, or to otherwise implement the arbitrator's awards. Mays Decl., *filed in* 02-1424-TEH (Doc. 16) at ¶10.

The Union therefore initiated the process to select another arbitrator to hear the remedy issues. Declaration of Linda Lye, *filed in* CV 08-1242-TEH (Doc. 17), Exhs. J & K. The parties thereafter exchanged letters, with the Company objecting to the Union's effort to select an arbitrator and the Union disputing that it was "premature or otherwise improper" to do so. *Id.*, Exhs. M & N. The Union offered to meet with the Company to discuss these issues. *Id.*, Exh. N. But the Company instead filed this petition to vacate both arbitration awards issued by Arbitrator Askin. *See* Petn. & Mot. to Vacate Labor Arbitration Award (Doc. 1).

*NUMMI's position in federal court.* In NUMMI's opening brief, it contended that the arbitration awards should be vacated because Arbitrator Askin had not reached or ruled upon any remedy issues in those awards. *See id.* at 14-15. The Company further asserted that Arbitrator Askin had exceeded his jurisdiction by declining to retain jurisdiction over remedy. *Id.* at 15. NUMMI complained that Arbitrator's Askin resignation would create inefficiencies by forcing the

1   parties to arbitrate before a "brand new arbitrator," but then insisted that the proper remedy should

2   be to vacate the already-issued merits awards. *Id.* at 14.

3        Confronted with NUMMI's federal court attack on Arbitrator Askin's final and binding

4   awards, the Union took measures to protect the awards, by filing an opposition to NUMMI's

5   petition, *see* Opp. to Pet. & Mot. to Vacate (Doc. 17), and also filing a complaint and motion to

6   confirm the awards and compel NUMMI to arbitrate the outstanding remedy issues. *See generally*

7   CV-08-1242-TEH.

8        NUMMI's reply brief in support of its petition to vacate incorporated by reference its

9   arguments in opposition to the Union's motion for an order confirming the merits awards and

10  compelling arbitration on remedy. Reply (Doc. 28) at 2:2-6. NUMMI's central assertion was that it

11  was critical to have the same arbitrator "hear an entire case." *Id.* at 3:8.

12       After "carefully review[ing] the parties' written and oral arguments and the evidence

13  submitted in this motion," as well as "pleadings and evidence filled in support of and in opposition

14  to the Union's Motion for Summary Judgment in the related case seeking confirmation of the award,

15  case No. C-08-1242," the Court rejected all of NUMMI's arguments, denied its petition to vacate

16  the awards, and instead confirmed both of Arbitrator Askin's awards. Order at 1, 22; *see also*

17  Judgment (Doc. 33).[1]

18  **III.   ARGUMENT**

19       **A.   The Union Should Be Awarded Its Attorneys' Fees And Expenses To Deter
         NUMMI From Engaging In Future Dilatory, Frivolous, And Bad Faith Conduct
20       And To Compensate The Union For Having To Vindicate Its Clearly
         Established Rights**

21

22       Courts may award attorneys' fees and expenses "when the losing party has 'acted in bad

23  faith, vexatiously, wantonly, or for oppressive reasons'." *Int'l Union of Petroleum and Indus.*

24  *Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (quoting *Alyeska*

25          [1] The Union attempted to meet and confer with the Company on the issue of attorneys' fees.
26  Decl. of Linda Lye ISO Mot. for Attys' Fees ("Lye Fees Decl.") at ¶5. The Company did not agree
    that the Union was entitled to an award of attorneys' fees, necessitating this motion. *Id.* The parties
27  did, however, agree to a briefing schedule for this motion, with the Company's opposition brief to
    be filed on August 8, 2008; and the Union's reply brief to be filed on August 25, 2008, for a hearing
28  date of September 8, 2008. *Id.* at ¶6.

*Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)) (hereinafter "*IUPIW*").

NUMMI's patently disingenuous and illogical arguments before this Court demonstrate that the

Company filed this petition for the sole purpose of depriving the Union of its victory in arbitration,

notwithstanding the parties' agreement to respect all arbitration decisions as "final and binding."

Such bad faith tactics undermine the goal of industrial stability that the process of labor arbitration

was intended to advance.  An award of attorneys' fees is necessary to deter similar gamesmanship

by NUMMI in the future and to compensate the Union for needlessly having had to litigate in

federal court.

       1.     Arbitration is intended to provide an efficient method for resolving disputes and

labor arbitration in particular serves the further salutary purpose of advancing industrial stability.

*See, e.g., United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578 ("A major

factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the

collective bargaining agreement."); *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727,

731 (9th Cir. 2006) (confirming arbitration award noting highly deferential standard for judicial

review of awards in light of purpose of FAA in furthering "efficient and expeditious resolution of

claims") (citing H.R. Rep. No. 68-96 (1924)).  Given the strong federal policy favoring arbitration,

especially in the labor context, the Ninth Circuit has awarded attorneys' fees to the party opposing a

petition to vacate an arbitration award and to the party forced to bring an action seeking

confirmation, as a result of a refusal to recognize the validity of an award.  *See, e.g., Rostad and

Rostad Corp. v. Investment Management & Research, Inc.*, 923 F.2d 694, 697 (9th Cir. 1991)

(awarding attorneys' fees to party opposing petition to vacate); *IUPIW*, 707 F.2d at 429 (affirming

award of attorney's fees to union that brought action seeking confirmation).

       "[B]ad faith supporting an award of attorneys' fees may be found in conduct that led to the

lawsuit or in the conduct occurring during the course of the action."  *Id.* at 428.  An award of

attorneys' fees is also appropriate where a party's "obstinacy in granting [the other party] his clear

legal rights necessitated resort to legal action with all the expense and delay entailed in litigation."

*Id.* (quoting *Huecker v. Milburn,* 538 F.2d 1241, 1245 n.9 (6th Cir. 1976)).  An award of attorneys'

fees serves the dual purpose of "deter[ring] frivolous dilatory tactics," and compensating a party for

1  incurring "the added expense of having to vindicate clearly established rights in court." *Id.* (internal

2  quotation marks, citation omitted).

3      As the Ninth Circuit has explained, "[t]hese considerations are particularly apt in the context

4  of labor arbitration." *Id.* This is so because "labor arbitration advances the goal of industrial

5  stabilization." *Id.* Dilatory tactics in the labor context "not only den[y] the individual prompt

6  redress, it threatens the goal of industrial peace." *Id.* The Ninth Circuit has therefore held that "an

7  unjustified refusal to abide by an arbitrator's award" constitutes "bad faith, vexatious[] or . . .

8  oppressive" conduct which supports an award of attorneys' fees. *Id.*; *see also Sheet Metal Workers'*

9  *Int'l Ass'n Local Union No. 359 v. Madison Industries, Inc.*, 84 F.3d 1186, 1192 (9th Cir. 1996).

10  "'This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory

11  tactics that lead to wasteful and unnecessary litigation.'" *IUPIW*, at 429 (quoting *Int'l Ass'n of*

12  *Machinists & Aerospace Workers Dist. 776 v. Texas Steel Co.*, 639 F.2d 279, 284 (5th Cir. 1981)).

13      2.    "[A] party may not submit a claim to arbitration and then challenge the authority of

14  the arbitrator to act after receiving an unfavorable result." *Fortune, Alsweet and Eldridge, Inc. v.*

15  *Daniel,* 724 F.2d 1355, 1357 (9th Cir. 1983). NUMMI's challenge to the validity of Arbitrator

16  Askin's awards was a transparent effort to vacate unfavorable awards. This is readily apparent from

17  each of NUMMI's arguments.

18      NUMMI complained in its petition that Arbitrator Askin's resignation "subject[s] the parties

19  to potentially years of additional litigation before a brand new arbitrator." Petn. at 14. But in light

20  of NUMMI's requested relief – vacatur of the two merits awards issued after two years of

21  arbitration, four days of hearing, and extensive briefing – that is precisely the result NUMMI sought

22  to accomplish.[2] As the Court observed,

23      _____

24      [2] It bears emphasis that it was NUMMI's conduct that unnecessarily multiplied the
arbitration proceedings and delayed resolution of the merits of the Union's grievance by an

25  additional year. *Cf. IUPIW*, 707 F.2d at 428 ("bad faith supporting an award of attorneys' fees may
be found in conduct that led to the lawsuit"). Although the Union sought to resolve all of the issues

26  necessary to resolve the merits of its grievance in what became the first phase of the arbitration, the
Company insisted that the arbitrator reach *only* the Staudohar issue, as a result of which the parties

27  had to have a second hearing before the arbitrator. *See Road Sprinkler Fitters Local Union No. 669,*
*U.A. v. Cosco Fire Protection, Inc.,* 363 F.Supp.2d 1220, 1226 (C.D. Cal. 2005) ("evidence of delay

28      (continued...)

1   the remedy NUMMI seeks is even more burdensome and inefficient [than proceeding with
    remedy in front of a new arbitrator]:  if the court were to vacate the award and grant
2   NUMMI the relief it seeks, both parties would have to start from scratch; the new arbitrator
    would have to revisit *all* the liability issues Arbitrator Askin resolved over the course of two
3   evidentiary hearings and nearly fifty pages of opinion and award.

4   Order at 16.

5        After the Union's opposition brief pointed out the blatant illogic of NUMMI's argument that

6   a brand new arbitrator would create inefficiencies (*see* Union's Opp. (Doc. 17) at 2, 18), NUMMI

7   then retreated from emphasizing inefficiencies and shifted to the new argument that it was somehow

8   essential to the parties' contractual bargain that an entire grievance be heard by a single arbitrator,

9   supposedly because of the need for consistency.  *See* NUMMI's Reply (Doc. 28) at 3; *see also, e.g.,*

10  NUMMI's Opp., *filed in* CV 08-1242-TEH (Doc. 22) at 1:23-24, 3:8-9, 15-17, 20:11-16.  Indeed,

11  NUMMI made this "single arbitrator" argument so vociferously that its Vice President submitted a

12  declaration under penalty of perjury stating that "NUMMI believes that having one arbitrator decide

13  an entire case is vital to the parties' arbitration process."  Declaration of Robert McCullough, *filed*

14  *in* CV-08-1242-TEH (Doc. 23), at ¶7; *see also id.* at ¶5 ("The parties have always interpreted [the

15  collective bargaining agreement] to require one arbitrator, not multiple arbitrators, to hear an entire

16  dispute.").  But NUMMI's counsel acknowledged that after Arbitrator Askin issued his first award

17  ruling against the Company, the Company made a request to the Union that the parties "use a

18  different arbitrator for the remainder of the grievance arbitration."  Declaration of Nick

19  Geannacopulos, *filed in* CV-08-1242-TEH (Doc. 24), at ¶3.  As this Court observed, "NUMMI was

20  perfectly willing to substitute arbitrators when doing so would serve its purposes."  Order at 20.

21  Thus, this argument is also unsupportable.

22        NUMMI's complaint that Arbitrator Askin's awards were defective because they did not

23  specify a remedy is equally disingenuous.  *See* Petn. at 14-15.  Arbitrator Askin declined to reach

24  any remedy issues at NUMMI's behest, and over the objection of the Union.  *See, e.g.,* Order at 5.

25  But after succeeding in preventing Arbitrator Askin from reaching any remedy issues, NUMMI ran

26

27              [2](...continued)
    tactics . . . by an employer throughout a proceeding . . . was sufficient to support" an award of
28  attorneys' fees).

1    to federal court and attempted to vacate his awards on the ground that he did precisely what

2    NUMMI insisted upon.  This argument, therefore, is also blatantly contradictory.  *See Road*

3    *Sprinkler Fitters Local Union No. 669, U.A. v. Cosco Fire Protection, Inc.,* 363 F.Supp.2d 1220,

4    1226 (C.D. Cal. 2005) ("evidence of . . . inconsistent positions taken by an employer throughout a

5    proceeding . . . was sufficient to support" an award of attorneys' fees).

6         3.    The patent frivolousness of its arguments provides further evidence of NUMMI's

7    bad faith.  *See Rostad and Rostad Corp.,* 923 F.2d at 697 (awarding attorneys' fees to party

8    opposing petition to vacate where petitioner's position was "meritless"); *SSA Terminals v.*

9    *Machinists Automotive Trades Dist. Lodge No. 190,* 244 F.Supp.2d 1031, 1040 (N.D. Cal. 2003)

10   (awarding attorneys' fees where employer filed a "frivolous" petition to vacate).  NUMMI was

11   completely "unjustified" in refusing to recognize Arbitrator Askin's awards as final and binding

12   because it lacked *any* legal support for its arguments.  *IUPIW,* 707 F.2d at 428 ("unjustified refusal

13   to abide by an arbitrator's award" constitutes "bad faith, vexatious[] or . . . oppressive" conduct

14   warranting award of attorneys' fees).  The CBA expressly states that all decisions submitted to

15   arbitration are "final and binding."  CBA, Art. X, §8 at 23 (attached as Appx., Exh. 3).  Yet

16   NUMMI nevertheless sought to vacate this petition.  The Court has already rejected the Company's

17   arguments, and so we discuss here only the more egregious flaws and inconsistencies in its position.

18        (a)    NUMMI's incompleteness argument was barred even by the cases upon

19   which it purportedly relied.  *See* Order at 13-15 (distinguishing cases cited by NUMMI and noting

20   that "[o]ther cases on which NUMMI relies in fact support the Union's position").  As explained by

21   the court in *Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.*, 990 F.Supp. 304, 309 (S.D.N.Y.

22   1998), it is "well-settled that an arbitration award disposing of a separate and independent claim

23   may be deemed final and subject to confirmation although it does not dispose of all the claims that

24   were submitted to arbitration."  Order at 14 (quoting *Clarendon*); *see* Petn. at 12:5-6 (citing

25   *Clarendon* but mistakenly referring to case by a different name).  Indeed, this Court concluded that

26   *Island Territory of Curacao v. Solitron Devices, Inc.*, 356 F.Supp.1 (S.D.N.Y. 1973) – also cited by

27   NUMMI (*see* Petn. at 12) – "*compels* a finding that the award here . . . is mutual, definite and final

28   under § 10(a)(4)."  Order at 15 (emphasis added); *see also id.* at 15 n.10 ("Although NUMMI

1    argued at the hearing that there is 'no case where the entire panel drops out,' *Curacao* is precisely

2    such a case.").

3        In an effort to distinguish cases cited by the Union that overwhelmingly supported the

4    conclusion that Arbitrator Askin's awards on liability were final and definite because the parties had

5    bifurcated the proceedings between liability and remedy, NUMMI "assert[ed] that the arbitration

6    was not, in fact, bifurcated along classic liability/damages lines." Order at 15 (citing NUMMI

7    Reply at 10-11).  As this Court found, however, "the Arbitrator bifurcated liability and remedy

8    proceedings" "*[a]t NUMMI's insistence*."  Order at 13 (emphasis added).

9        Moreover, even if, contrary to caselaw, Arbitrator Askin's awards were "incomplete," the

10   remedy, as NUMMI's own cases again make clear, would have been to remand to arbitration to

11   specify a remedy and not, as NUMMI requested, vacatur.  Although NUMMI cited *Curacao*, that

12   court rejected the very argument that NUMMI makes here.  The party in *Curacao* challenging the

13   arbitration asserted that the award was incomplete for failure to specify a remedy and that the award

14   should therefore be vacated.  The *Curacao* court declined to find the award at issue incomplete, and

15   went on to observe that the argument was "strange" and "not persuasive":  if an award does not

16   specify remedy, "the result [is] not that the debtor party escaped liability, as Solitron apparently

17   hope[] to do, but simply that the matter [be] resubmitted to the [arbitration process] to find the

18   amount due." *Curacao*, 356 F.Supp. at 11, 12.  Similarly, NUMMI cannot escape the arbitrator

19   rulings finding it liable for violating its CBA.

20        (b)    NUMMI's second argument, that the arbitrator "exceeded his authority"

21   simply by resigning from the case, is also completely meritless.  On its face, the argument – that an

22   arbitrator exceeds his jurisdiction by declining to assert it – is absurd.  And it is equally absurd to

23   attack this arbitrator in particular for exceeding his authority, given the extensive focus in both

24   arbitration hearings about the scope of his authority, and his careful circumscription (to NUMMI's

25   benefit) of his decisions to only the narrow universe of issues NUMMI agreed to submit.  *See supra*

26   at 3-4; Order at 4-5.

27        NUMMI attempted to recast the arbitrator's award as containing an unprecedented order that

28   the parties "arbitrate with someone else" (Petn. at 15), when the need to proceed before a different

1   arbitrator was merely an artifact of Arbitrator Askin's decision to resign.  *Cf.* Order at 17.  But even

2   if the award could be construed as an order to arbitrate with a substitute arbitrator, NUMMI

3   "admitted at the hearing that it ha[d] no authority suggesting that an arbitrator's decision to resign

4   and direct the parties to another arbitrator has ever been treated as a quasi-injunctive award, much

5   less one outside the arbitrator's authority."  Order at 17; *see also* Reporter's Transcript of June 17,

6   2008 Hearing ("6/17/08 RT") (Doc. 34) at 18:6-7 (NUMMI's counsel: "I don't have a case that says

7   that, your Honor.").

8        The Union cited extensive caselaw which makes clear that where an arbitrator resigns,

9   declines jurisdiction, or otherwise becomes unavailable, the arbitration simply proceeds with a

10  substitute arbitrator who lacks any authority to revisit the issues already decided.  *See* Union's Opp.

11  at 12-18.  NUMMI's efforts to distinguish these cases were riddled with inconsistencies.

12       For example, NUMMI attempted to distinguish cases involving death from those involving

13  resignation (*see, e.g.,* NUMMI Reply at 6, 12), but ignored that some of the cases cited by the Union

14  also involved resignation (*see, e.g., Dow Corning Corp. v. Safety Nat'l Casualty Corp.*, 335 F.3d

15  742 (8th Cir. 2003) (cited at Union's Opp. at 12-13)), and never explained why that distinction

16  should make a difference.  *See* Order at 19 ("These and other cases cited by the Union clearly show

17  that when an arbitrator dies, a new arbitrator may be appointed and cannot revisit final decisions like

18  the liability finding here.  NUMMI has not explained why the rule should be any different if the

19  arbitrator resigns rather than dies.").  Indeed, at oral argument, NUMMI conceded that it did not

20  really believe there was any distinction between the resignation and death scenarios and that, even if

21  Arbitrator Askin had died, NUMMI would still argue that the case had to be "re-arbitrate[d]."

22  Reporter's Transcript of June 17, 2008 Hearing ("6/17/08 RT") (Doc. 34) at 9:9-12.  As this Court

23  explained, there is indeed no basis for distinguishing the death and resignation cases, because "both

24  are circumstances beyond the parties' control."  Order at 19.  "[F]orcing the parties to start anew

25  because of a circumstance beyond the parties' control would deprive the Union of its 'win' at the

26  liability stage."  Order at 21.  Without any justification, this is precisely what NUMMI sought to do.

27       In addition, NUMMI urged the Court to look to the Federal Arbitration Act ("FAA") when

28  doing so would serve its purposes, but to ignore the statute when it would not.  Effectively

1   acknowledging that it was swimming against the strong current of legal authority, NUMMI argued

2   that any rule allowing "for an arbitrator to quit" should be limited to cases under the Federal

3   Arbitration Act, and not applied to the labor context, which is governed by Section 301 of the Labor

4   Management Relations Act.  NUMMI's Opp., *filed in* 02-1242-TEH (Doc. 22) at 13 n.7.  NUMMI

5   was the one that first invoked the FAA in its petition to vacate and invited this Court to construe

6   Section 301 in light of "FAA principles."  Petn. at 2-3 n.3.  In any event, the labor context of this

7   Section 301[3] case made it less, not more, appropriate to vacate the arbitrator's decisions, than if this

8   were a commercial case.  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 986 (9th Cir. 2001)

9   ("[j]udicial scrutiny of an arbitrator's decision in a labor dispute" is "extremely limited"); Order at 7

10  ("courts ordinarily defer even more to arbitrator's decision in labor cases than in the ordinary

11  commercial context") (citing *Huber, Hunt & Nichols, Inc v. United Ass'n of Journeymen and*

12  *Apprentices of Plumbing and Pipefitting Indus., Local 38,* 282 F.2d 746, 754 (9th Cir. 2002)).

13          Further, nothing in the caselaw involving situations when an arbitrator exceeds his

14  jurisdiction supports NUMMI's request to vacate all of Arbitrator's Askin's rulings on the merits of

15  the Union's grievance.  As this Court found, "even if Arbitrator Askin had exceeded his authority by

16  ordering the parties to proceed before another arbitrator, the Court would not vacate his liability

17  finding, which all concede was within his authority."  Order at 21 (citing *Comedy Club, Inc. v.*

18  *Improv West Assocs.*, 514 F.3d 833, 845 (9th Cir. 2007).

19          Indeed, NUMMI was well aware that Ninth Circuit law *precluded* its effort to re-arbitrate

20  Arbitrator Askin's already-issued liability rulings.  NUMMI invoked the "functus officio" doctrine,

21  as described in *McClatchy Newspapers v. Central Valley Typographical Union,* 686 F.2d 731 (9th

22  Cir. 1982), in support of its request for vacatur.  *See* Petn. at 17 n.9.  But that doctrine provides that

23  arbitrators are prohibited from doing exactly what NUMMI sought to do here:  "redetermine the

24  issues" previously submitted.  *McClatchy*, 686 F.2d at 734.  Further arbitration proceedings do "not

25  . . . [present] an opportunity to relitigate" previously decided issues.  *Id.* at 734 n.1.

26  _____

27          [3] NUMMI's petition, which relies on the FAA, is necessarily also a Section 301 case, as the
    FAA provides no independent basis of federal court jurisdiction.  *See, e.g., Douglas v. U.S. Dist.*
    *Court for Cent. Dist. of California*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007)

28

NOTICE OF MOTION & MOTION FOR ATTYS' FEES & EXPENSES; MEM. OF P&A ISO MOTION,
Case No. CV-08-0976 TEH                                                                              13

\*       \*       \*

NUMMI cannot avoid a finding of bad faith by trying to frame its legal arguments as novel, *cf.* NUMMI's Reply at 2, when the very cases it cited in its petition flatly reject the arguments for which NUMMI offered them. Moreover, the record is clear that the legally frivolous attack on the arbitration awards consisted of purely post-hoc fabrications. As this Court found, "[t]here is no evidence that either party believed that either the parties or the Arbitrator would be able to reopen or revisit the liability phase once Arbitrator Askin issued his award." Order at 13. And NUMMI's willingness to substitute arbitrators when doing so was to its strategic advantage, *see* Order at 20, belies any claim that NUMMI brought this petition based on some principled belief that it is truly critical to the parties' collective bargaining relationship that a single arbitrator hear an entire grievance.

NUMMI has been "obstinat[e] in granting" the Union its clear legal right under the parties' CBA to have Arbitrator Askin's awards respected as final and binding. *IUPIW,* 707 F.2d at 428 (internal quotation marks, citations omitted); CBA, Art. X, §8 at 23 (attached as Appx., Exh. 3). NUMMI's "obstinacy . . . [has] necessitated resort to legal action with all the expense and delay entailed in litigation." *IUPIW,* 707 F.2d at 428 (internal quotation marks, citations omitted). Its "frivolous dilatory tactics not only den[y]" the approximately 100 wrongfully terminated disabled employees "prompt redress, [they] threaten[] the goal of industrial peace." *Id.* That being so, "[t]he deterrence aspect of an award of attorneys' fees is particularly served" here and would further compensate the Union "for the added expense of having to vindicate clearly established rights in court." *Id.* (internal quotation marks, citations omitted).

## B.    The Attorneys' Fees and Litigation Expenses Sought By the Union Are Reasonable.

The Union requests an award of $78,435.29 for its attorneys' fees and litigation expenses through July 5, 2008. Because these fees and expenses were reasonably incurred as a result of NUMMI's refusal to recognize the final and binding nature of Arbitrator Askin's awards, the request should be granted.

1      "According to the 'lodestar' method developed by the Supreme Court, '[t]he most useful

2  starting point for determining the amount of a reasonable fee is the number of hours reasonably

3  expended on the litigation multiplied by a reasonable hourly rate.'" *Cairns v. Franklin Mint Co.*,

4  292 F.3d 1139, 1157 (9th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))

5  (applying lodestar method in determining appropriate award where opposing party litigated case in

6  "bad faith"). "A strong presumption exists that the lodestar represents a reasonable fee." *Jordan v.*

7  *Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).

8      The Union is entitled to compensation for all hours reasonably expended on the entire course

9  of this litigation, at hourly rates that reflect the reasonable market value of counsel's legal services.

10  *Brown v. Sullivan*, 916 F.2d 492, 496-97 (9th Cir. 1990) (awarding fees and expenses under "bad

11  faith" standard and holding that district court may award attorney fees at market rates for the entire

12  course of litigation traceable to the bad faith conduct, including time spent preparing, defending, and

13  appealing two awards of attorney fees). This includes time spent in opposing this petition and in

14  preparing the Union's affirmative suit seeking an order confirming the arbitration awards and an

15  order compelling NUMMI to arbitrate the outstanding remedy issue. Both this case and the related

16  complaint by the Union were directly traceable to NUMMI's bad faith refusal to recognize the

17  arbitration awards as final and binding.

18      An award of fees is appropriate for time spent opposing NUMMI's petition. *See Rostad and*

19  *Rostad Corp.*, 923 F.2d at 697 (awarding attorneys' fees to party opposing petition to vacate). And

20  given NUMMI's intransigence, the Union needed to obtain more than just a denial of NUMMI's

21  petition to vacate. The Union needed an affirmative judicial order confirming the awards, or

22  NUMMI would only have returned to arbitration if the parties started from square one and re-

23  arbitrated the merits of the Union's grievance. An award of attorneys' fees spent on the Union's

24  affirmative litigation is plainly proper where, as here, the employer's refusal to recognize the

25  validity of the arbitration awards was "unjustified." *See IUPIW*, 707 F.2d at 428 (affirming award

26  of attorney's fees to union that brought action seeking confirmation).

27  //

28  //

The following is a chart setting forth the lodestar calculation for the work performed on the merits of the litigation leading up to the Court's entry of judgment denying the Company's petition to vacate and confirming the two arbitration awards:

| Timekeeper | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Jonathan Weissglass | 9.7 | $590 | $5,723.00 |
| Linda Lye | 103.7 | $470 | $48,739.00 |
| Peder Thoreen | 8.0 | $420 | $3,360.00 |
| Paralegal | 2.0 | $195 | $390.00 |
| **Totals**: | 123.4 | | $58,212.00 |

The following is a chart setting forth the lodestar calculation for the work performed preparing this attorneys' fees motion up to and through July 5, 2008:

| Timekeeper | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Jonathan Weissglass | 0.3 | $590 | $177.00 |
| Linda Lye | 16.6 | $470 | $7,802.00 |
| Jennifer Sung | 20.5 | $345 | $7,072.50 |
| **Totals**: | 37.4 | | $15,051.50 |

The evidence in the record fully supports the lodestar calculations. All the hours for which compensation is requested are supported by detailed, contemporaneous time records, which were maintained in the normal course of business. *See* Lye Fees Decl. at ¶¶10-11 & Exh. B & C. All of the hours sought were actually billed (or, in the case of hours recently incurred, will actually be billed) to the Union. *Id.* at ¶13. The Union's counsel litigated the matter efficiently: Ms. Lye performed the majority of work and closely supervised the remainder; her familiarity with the tortured procedural history of the Union's grievance and consultation with senior partners at her firm who have extensive experience with arbitration law under the FAA and Section 301 of the LMRA greatly reduced the amount of time that would otherwise have been required for this task. *See id.* at ¶8. Through the exercise of billing judgment, the lodestar calculation includes substantially fewer hours than were actually spent in litigation arising out of the Company's bad faith refusal to recognize the validity of the arbitration awards. *See id.* at ¶12.

The requested hourly rates set forth above for the Altshuler Berzon LLP attorneys and paralegals who worked on this case are the firm's 2008 hourly billing rates for commercial litigation clients and are at or below the market rates for comparably qualified and experienced counsel

1   handling similar litigation in the Bay Area and for paralegals.  *See* Declaration of Michael Rubin at

2   ¶¶13.  The firm has frequently been awarded fees at our then-current commercial hourly rates in

3   prior cases.  *See id.*

4        The Union is also entitled to litigation expenses.  The Ninth Circuit has made clear that

5   federal law requires an award of such expenses, in addition to statutory costs, to prevailing parties in

6   fee-shifting cases "when it is the 'prevailing practice in a given community' for lawyers to bill those

7   costs separately from their hourly rates."  *Trustees of the Construction Industry and Laborers*

8   *Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quoting

9   *Missouri v. Jenkins*, 491 U.S. 274, 286-87 (1989)).  Here, the Union seeks an expense award of

10  $5,171.79, comprised of typical expenses such as court reporter fees/transcripts, filing service fees,

11  filing fees, courier, facsimile, computer research, in-house photocopying and printing, telephone

12  calls, postage, and travel.  Lye Fees Decl. at ¶15 & Exh. D.  It is the prevailing practice in the San

13  Francisco Bay Area legal community for lawyers to bill such expenses separately from their hourly

14  rates.  Rubin Decl. at ¶15; *see also Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1419, 1422

15  (1991) (finding it "undisputed" that out-of-pocket litigation expenses that are not statutory costs,

16  including "photocopying, postage, travel and the like[,] . . . represent expenses ordinarily billed to a

17  client and are not included in the overhead component of counsel's hourly rate").  The expenses the

18  Union seeks to recover are out-of-pocket expenses actually and reasonably incurred in the ordinary

19  course of this litigation.  *See* Lye Fees Decl. at ¶15.  These expenses were (or in the case of recently

20  incurred expenses, will be) actually billed to the Union separately from Altshuler Berzon LLP's

21  hourly rates.  *See id.*  Compensation for these expenses should be awarded to the Union under

22  *Redland Ins. Co.*, 460 F.3d at 1258.

23       Counsel will submit a statement of additional fees and expenses incurred after July 5**,** 2008,

24  in conjunction with the reply papers in this matter, if any.

25  //

26  //

27  //

28  //

**CONCLUSION**

For the foregoing reasons, the Court should award the Union its attorneys' fees and litigation expenses in the amount of $78,435.29 (comprised of $73,263.50 in attorneys' fees and $5,171.79 in litigation expenses), plus any additional fees and expenses incurred after July 5, 2008 in this matter.

Dated:      July 8, 2008                    Respectfully submitted,

                                            JONATHAN WEISSGLASS
                                            LINDA LYE
                                            ALTSHULER BERZON LLP


                                            ____/s/Linda Lye_____
                                            By:
                                                 Linda Lye

                                            Attorneys for Respondent